# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| EDWARD M. WEIL, WILLIAM M. KAHANE, NICHOLAS S. SCHORSCH, and PETER M. BUDKO,<br><br>Plaintiffs,<br><br>v.<br><br>VEREIT OPERATING PARTNERSHIP, L.P.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 2017-0613-JTL<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Date Submitted: November 21, 2017
Date Decided: February 13, 2018

Kenneth J. Nachbar, John P. DiTomo, Elizabeth A. Mullin, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Attorneys for Plaintiffs*.

Stephen B. Brauerman, Sara E. Bussiere, BAYARD, P.A., Wilmington, Delaware; Scott A. Edelman, Alan J. Stone, MILBANK, TWEED, HADLEY & MCCLOY LLP, New York, New York; *Attorneys for Defendant.*

**LASTER, V.C.**

The plaintiffs sued to enforce their advancement rights. They moved for summary judgment on a variety of issues. This decision grants partial summary judgment in their favor.

## I.     FACTUAL BACKGROUND

The facts are drawn from the pleadings and the fifty-five exhibits submitted in connection with the motion for summary judgment. Because of the procedural posture, this decision assumes for purposes of analysis that any disputes of fact will be resolved against the movants.

### A.     Parties And Relevant Non-Parties

VEREIT, Inc. is a publicly traded real estate investment trust organized under the laws of the State of Maryland. VEREIT conducts all of its business through VEREIT Operating Partnership, L.P., a Delaware limited partnership (the "Partnership"). VEREIT serves as the sole general partner of Partnership. The Third Amended and Restated Agreement of Limited Partnership (the "Partnership Agreement") governs the business and affairs of the Partnership.

The four plaintiffs previously served as senior officers of VEREIT:

- Nicholas S. Schorsch co-founded VEREIT and served as its Chairman of the Board and Chief Executive Officer from 2011 through the last quarter of 2014.

- William M. Kahane served as President and Chief Operating Officer from December 2010 through February 2012.

- Edward M. Weil served as an Executive Vice President beginning in December 2010 and as Chief Operating Officer from February 2012 through February 2013.

1

- Peter M. Budko served as Chief Investment Officer and Executive Vice President from December 2010 through January 2014.

While employed as executive officers of VEREIT, the four plaintiffs also served as members of its board of directors (the "Board").

From VEREIT's founding until January 2014, non-party AR Capital, LLC provided management services to VEREIT, primarily through a subsidiary called ARC Advisors. During their tenure at VEREIT, the plaintiffs also held positions at AR Capital.

## B.    The Underlying Matters

On September 7, 2014, the Audit Committee of the Board commenced an investigation into alleged financial reporting irregularities at VEREIT (the "Internal Investigation"). On October 29, VEREIT filed a Form 8-K with the Securities and Exchange Commission which announced that the Audit Committee had identified errors in VEREIT's securities filings. The Form 8-K warned investors not to rely on VEREIT's annual report for 2013 and its quarterly reports for the first and second quarters of 2014. In March 2015, VEREIT announced that the Audit Committee had completed the Internal Investigation and that VEREIT had restated its annual results for fiscal years 2012 and 2013, its quarterly results for the first three quarters of 2013, and its quarterly results for the first two quarters of 2014. AR Capital and ARC Advisors provided management services to VEREIT during certain of the restated periods.

VEREIT's disclosures prompted a range of lawsuits. Investors filed a consolidated class action, thirteen direct actions, and four shareholder derivative actions (collectively,

2

the "Civil Actions"). Many of the Civil Actions named the plaintiffs and AR Capital as defendants.

Generally speaking, the complaints in the Civil Actions allege that Schorsch made intentionally false statements about VEREIT's financial results and internal controls. The plaintiffs allege that Schorsch, Budko, Kahane, and Weil caused VEREIT to pay more than $900 million to entities that they controlled, including AR Capital and ARC Advisors.

In November 2014, the SEC served a subpoena on VEREIT. The subpoena requested information about the plaintiffs' knowledge and activities in connection with the subject matter of the Internal Investigation and the Civil Actions. Subsequently, the Department of Justice and certain state regulators commenced investigations into AR Capital. This decision refers to the SEC, DOJ, and state regulator investigations as the "Government Investigations." At this point, it is unclear to what extent the Government Investigations involve the plaintiffs in their capacities as former directors and officers of VEREIT. It is also unclear whether the plaintiffs are targets of the Government Investigations.

This decision refers collectively to the Internal Investigation, the Civil Actions, and the Government Investigations as the "Underlying Matters." The Internal Investigation has been completed. The Civil Actions and Government Investigations remain pending.

## C.     The Plaintiffs Request Advancement From VEREIT.

In November 2014, the plaintiffs retained counsel to represent them in the Underlying Matters. Budko, Kahane, and Weil retained Kellogg, Hansen, Todd, Figel &

Frederick PLLC. For convenience, this decision calls them the "Kellogg Plaintiffs." Schorsch retained Paul, Weiss, Rifkind, Wharton & Garrison LLP.

The plaintiffs initially requested advancement[1] from VEREIT. They did not also request advancement from the Partnership. That decision made sense, because in September 2011, each of the plaintiffs had entered into a detailed indemnification agreement with VEREIT that also provided for advancement. As is customary, the indemnification agreements contained a variety of specific provisions addressing aspects of the indemnification and advancement process.

After providing VEREIT with the proper documentation to support their advancement requests, both Kellogg Hansen and Paul Weiss began sending VEREIT monthly invoices. VEREIT raised a slew of objections, delayed making payments, and paid only parts of the amounts requested.

VEREIT's objections to the Kellogg Plaintiffs' requests included the following:

- Kellogg Hansen's invoices failed to identify expenses incurred solely on behalf of AR Capital or for the Kellogg Plaintiffs in their roles as representatives of AR Capital.

- Kellogg Hansen failed to provide adequate explanations for amounts paid to third-party vendors.

---

[1] Delaware decisions vary in their use of "advancement" and "advancements." This decision uses the singular form— "advancement"—to describe the right to have expenses advanced. This decision uses the plural form—"advancements"— to describe a string of payments that flows from an advancement right. In this sense, "advancements" serves as shorthand for the phrase "amounts paid in advance for fees and expenses." That said, picking the right usage is sometimes difficult and at other times inconsequential. Doubtless, there will be times when this decision lapses by using the incorrect form.

4

- The Kellogg Plaintiffs failed to account for amounts received from one of AR Capital's insurers when submitting bills to VEREIT.

- Kellogg Hansen failed to follow VEREIT's billing guidelines, which asked law firms to apply a 10% discount on all invoices.

- The Kellogg Plaintiffs sought advancement for their defense in the derivative actions, which VEREIT claimed to have already paid.

Based on these objections, VEREIT refused to advance more than $12 million to the Kellogg Plaintiffs.

VEREIT's objections to Schorsch's requests included the following:

- Paul Weiss charged excessive rates for its staff attorneys.

- Paul Weiss charged excessive fees for document review during the first six months of 2017.

- Paul Weiss consistently overstaffed the representation.

- Paul Weiss's invoices provided inadequate descriptions of the work performed.

- Paul Weiss increased its billing rates during the second year of its representation of Schorsch without receiving VEREIT's approval.

- Paul Weiss charged for amounts that were not covered under VEREIT's billing guidelines.

Based on these objections, VEREIT refused to advance more than $5.9 million to Schorsch.

**D.    This Litigation**

On August 24, 2017, the plaintiffs filed this lawsuit. Earlier that day, the Kellogg Plaintiffs had sent advancement demands to the Partnership, invoking an advancement provision in the Partnership Agreement. The lawsuit named both VEREIT and the Partnership as defendants.

5

On August 29, Schorsch served the Partnership with his advancement request. That same day, the plaintiffs filed an amended complaint, which remains the operative pleading (the "Complaint").

The Complaint focused primarily on VEREIT. Counts I-IV asserted claims for breach of the indemnification agreements or sought declaratory judgments establishing rights under the indemnification agreements. Only Count V focused on the Partnership. It sought a declaratory judgment that the Partnership was obligated to provide advancements under the Partnership Agreement.

On September 8, 2017, VEREIT and the Partnership answered the Complaint. The Partnership took the same positions as VEREIT and made clear that it was asserting the same objections to the plaintiffs' advancement requests as VEREIT had asserted.

On September 29, 2017, the plaintiffs moved for summary judgment. VEREIT and the Partnership cross-moved to dismiss or stay this case in deference to litigation pending in other jurisdictions, and VEREIT moved for dismissal for lack of personal jurisdiction. By orders dated December 13, 2017, I denied the defendants' motion to dismiss or stay the case and granted the motion to dismiss VEREIT for lack of personal jurisdiction. VEREIT's dismissal rendered moot the claims asserted in Counts I-IV.

The motion for summary judgment remained pending as to Count V. This decision rules on particular objections raised initially by VEREIT and maintained by the Partnership. It does not determine a specific amount to which the plaintiffs are entitled.

6

## II.     PROCEDURAL STANDARD

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] On a motion for summary judgment, "[t]he moving party bears the burden of establishing that there are no issues of material fact, and the court must review all evidence in the light most favorable to the non-moving party."[3] "Advancement cases are particularly appropriate for resolution on a paper record, as they principally involve the question of whether claims pled in a complaint . . . trigger a right to advancement under the terms of a corporate instrument."[4]

## III.     LEGAL ANALYSIS

Section 17-108 of the Delaware Revised Uniform Limited Partnership Act (the "LP Act") states that "[s]ubject to such standards and restrictions, if any, as are set forth in its partnership agreement, a limited partnership may, and shall have the power to, indemnify and hold harmless any partner or other person from and against any and all claims and demands whatsoever."[5] The statute "is broadly empowering and deferential to the

---

[2] Ct. Ch. R. 56(c).

[3] *Gary v. Beazer Homes USA, Inc.*, 2008 WL 2510635, at *3 (Del. Ch. June 11, 2008) (Strine, V.C.).

[4] *DeLucca v. KKAT Mgmt.*, 2006 WL 224058, at *6 (Del. Ch. Jan. 23, 2006) (Strine, V.C.).

[5] 6 *Del. C.* § 17-108.

contracting parties' wishes regarding indemnification and advancement."[6] "In fact, Section 17-108 defers completely to the contracting parties to create and delimit rights and obligations with respect to indemnification and advancement of expenses."[7] "Section § 17–108 of the [LP Act] gives limited partnerships wider freedom of contract to craft their own indemnification scheme for a partnership's indemnitees than is available to corporations under § 145 of the DGCL, which creates mandatory indemnification rights for corporate indemnitees in some circumstances and also bars indemnification in others."[8] Drafters can "exercise[] their freedom of contract to eschew the Delaware statutory approach to corporate indemnification and create an indemnification scheme" that uses different requirements.[9] The same is true for advancement.

Section 6.03(b) of the Partnership Agreement grants mandatory advancement rights on the following terms:

> The Partnership shall reimburse an Indemnitee for reasonable expenses incurred by an Indemnitee who is a party to a proceeding in advance of the final disposition of the proceeding upon receipt by the Partnership of (i) a written affirmation by the Indemnitee of the Indemnitee's good faith belief that the standard of conduct necessary for indemnification by the Partnership

---

[6] *Active Asset Recovery, Inc. v. Real Estate Asset Recovery Servs., Inc.*, 1999 WL 743479, at *16 (Del. Ch. Sept. 10, 1999) (Strine, V.C.) (citation omitted).

[7] *Delphi Easter P'rs Ltd. P'ship v. Spectacular P'rs, Inc.*, 1993 WL 328079, at *2 (Del. Ch. Aug. 6, 1993) (Allen, C.).

[8] *Stockman v. Heartland Indus. P'rs, L.P.*, 2009 WL 2096213, at *8 (Del. Ch. July 14, 2009) (Strine, V.C.); *accord Delphi Easter*, 1993 WL 328079, at *2 ("Section 17-108 is also broader than the statutory indemnification provision applicable to corporations . . .").

[9] *Stockman*, 2009 WL 2096213, at *17.

8

as authorized in this Section 6.03 has been met, and (ii) a written undertaking by or on behalf of the Indemnitee to repay the amount if it shall ultimately be determined that the standard of conduct has not been met.[10]

The Partnership Agreement defines the term "Indemnitee," as any person "made a party to a proceeding by reason of its status as . . . a director, manager or member of the General Partner or an officer or employee of the Partnership or the General Partner.[11]

When the events giving rise to the Underlying Proceedings took place, the General Partner was VEREIT.[12] The definition of Indemnitee thus includes both persons made party to a proceeding by reason of their status as officers or employees of the Partnership and persons made party to a proceeding by reason of their status as directors, managers, members, officers, or employees of VEREIT. Critically, the definition of Indemnitee does not include AR Capital, nor does it specifically call out persons made party to a proceeding by reason of their roles with AR Capital.

As the term "Indemnitee" suggests, the advancement right in Section 6.03(b) builds upon an indemnification right that appears in Section 6.03(a). It states:

> To the fullest extent permitted by law, the Partnership shall indemnify an Indemnitee from and against any and all losses, claims, damages, liabilities, joint or several, expenses (including reasonable legal fees and expenses), judgments, fines, settlements, and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, that relate to the operations of the Partnership as set forth in this Agreement in which any Indemnitee may be involved, or is threatened

---

[10] P'ship Agreement § 6.03(b). The Partnership Agreement can be found at Romagnoli Aff. Ex 4.

[11] *Id.* art. I.

[12] *Id.* at 1 (Recitals).

9

to be involved as a party or otherwise, unless it is established that: (i) the act or omission of the Indemnitee was material to the matter giving rise to the proceeding and either was committed in bad faith or was the result of active and deliberate dishonesty; (ii) the Indemnitee actually received an improper personal benefit in money, property or services; or (iii) in the case of any criminal proceeding, the Indemnitee had reasonable cause to believe that the act or omission was unlawful . . . .[13]

When the two sections are read together, Section 6.03(b) provides an Indemnitee with a right to mandatory advancement as long as (i) it is possible that the Indemnitee later could be entitled to indemnification and (ii) the Indemnitee provides the written affirmation and the written undertaking required by Section 6.03(b).

Setting aside the requirements of a written affirmation and undertaking, the resulting structure establishes a series of requirements before an individual can receive advancements. First, the proceeding must qualify for coverage. To meet this test, the proceeding must "relate to the operations of the Partnership as set forth in this Agreement." This decision sometimes refers to a proceeding that satisfies this test as a "covered proceeding."

Second, the individual seeking coverage must qualify as an Indemnitee. For the individuals in this case, they must be involved "by reason of [their] status as . . . a director, manager or member of [VEREIT] or an officer or employee of the Partnership or [VEREIT]." This decision sometimes refers to this concept as a "covered capacity" or an "official capacity."

---

[13] *Id.* § 6.03(a).

Third, the Indemnitee must have a sufficient degree of involvement in the proceeding to trigger coverage. For advancement, the Indemnitee must be "a party to" the proceeding. The party requirement for advancement is notably stricter than the degree of involvement that is sufficient for indemnification, where coverage extends to any proceeding "in which any Indemnitee may be involved, or is threatened to be involved as a party or otherwise." For purposes of indemnification, a degree of tension exists between this language and the definition of Indemnitee, which speaks of a person who is "made a party to a proceeding." This decision need not examine that tension further, because it deals with advancement, not indemnification.[14] For advancement, both the language of Section 6.03(b) and the definition of "Indemnitee" require that the Indemnitee be "a party to" the proceeding.

For purposes of this case, the Partnership accepts that the Partnership Agreement provides for mandatory advancement.[15] The Partnership accepts that the plaintiffs have provided the requisite written affirmations and undertakings. The Partnership agrees that many of the Civil Actions are covered proceedings and that, for certain aspects of those proceedings, the plaintiffs have been sued in a covered capacity.[16] Nevertheless, the Partnership has raised a series of objections to the plaintiffs' claim for advancements. This

---

[14] *See Advanced Mining Sys., Inc. v. Fricke*, 623 A.2d 82, 84-85 (Del. Ch. 1992) (Allen, C.) (explaining that indemnification and advancement are "legally quite distinct").

[15] Defs.' Answering Br. at 15-16, 40-41.

[16] *Id.* at 9.

decision does not address the plaintiffs' entitlement to specific amounts in dollars and cents. Instead, it addresses the categorical objections that the Partnership has raised and, where possible, resolves them as a matter of law. As the Partnership has recognized, many of its objections do not require "the court to engage in a 'granular review'" and "can be resolved in broad strokes."[17]

## A.      The Civil Actions

The Partnership argues that the Kellogg Plaintiffs cannot recover all of the advancements they have sought for the Civil Actions. The Partnership contends that some of the amounts sought relate to claims brought against the Kellogg Plaintiffs' in non-covered capacities. It contends that other amounts relate to work for AR Capital.

To determine whether the Kellogg Plaintiffs are entitled to advancement, the first question is whether the Civil Actions are covered proceedings. As noted, a lawsuit is a Covered Proceeding if it "relate[s] to the operations of the Partnership." All of the Civil Actions, including the aspects relating to AR Capital, clearly relate to the operations of the Partnership.

The next question is whether the Kellogg Plaintiffs are Indemnitees. To qualify, each of the Kellogg Plaintiffs must be a "party" to the covered proceeding "by reason of" his status as an officer or employee of the Partnership or as an officer, director, manager, member, or employee of VEREIT. The Delaware Supreme Court has explained that to

---

[17] *Id.* at 50-51.

12

meet the "'by reason of" test, there must be "a nexus or causal connection" between the underlying proceeding and the function or capacity that the individual performed on behalf of the entity.[18] Elaborating, the high court held that "if there is a nexus or causal connection between *any* of the underlying proceedings . . . and one's official corporate capacity, those proceedings are 'by reason of the fact' that one was a corporate officer, without regard to one's motivation for engaging in that conduct."[19]

Advancement cases are summary proceedings where the only question involves the extension of credit.[20] "If it is subsequently determined that a corporate official is not entitled to indemnification, he or she will have to repay the funds advanced."[21] "In advancement cases, the line between being sued in [a non-covered] capacity and one's corporate capacity generally is drawn in favor of advancement with disputes as to the ultimate entitlement to retain the advanced funds being resolved later at the indemnification stage."[22] Whether an individual has been sued in an official capacity for purposes of advancement normally turns on the pleadings in the underlying litigation.[23]

---

[18] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 213 (Del. 2005).

[19] *Id.* at 214 (emphasis added) (internal citations omitted).

[20] *See Advanced Mining*, 623 A.2d at 84.

[21] *Homestore*, 888 A.2d at 214.

[22] *Holley v. Nipro Diagnostics, Inc.* ("*Holley I*"), 2014 WL 7336411, at *9 (Del. Ch. Dec. 23, 2014); *accord Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *6 (Del. Ch. May 28, 2015).

[23] *Holley I*, 2014 WL 7336411, at *8 ("[I]n this case, the 'by reason of the fact' analysis requires looking to the allegations in the SEC's complaint. In that regard, I note

The Partnership concedes that the complaints in the Civil Actions named the Kellogg Plaintiffs as defendants by reason of their status as directors and officers of VEREIT. The Partnership also concedes that the Kellogg Plaintiffs are entitled to advancement in that capacity. But the Partnership contends that the Civil Actions also involve claims against the Kellogg Plaintiffs in non-covered roles on behalf of AR Capital. Relying heavily on *Fasciana v. Electronic Data Systems Corp.* ("*Fasciana I*"),[24] the Partnership argues that the plaintiffs cannot receive advancements for their non-covered roles at AR Capital.

In *Fasciana I*, an attorney who claimed to have acted as an agent of a corporation sought indemnification under the DGCL and the corporation's bylaws. The case largely turned on whether the concept of an "agent" for purposes of Section 145 of the DGCL extended to outside counsel. Chief Justice Strine, writing while a member of this court, held that the term "agent" for purposes of Section 145 generally did not encompass the types of activities that the lawyer performed for the corporation in that case, and he

that courts often can determine whether the 'by the reason of the fact' requirement that has been satisfied solely by examining the pleadings in the underlying litigation . . . ." (citation omitted)); *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1051 (Del. Ch. 2014) ("Having re-examined the amended complaint in the Pennsylvania Action, I find that . . . Scott was made a party to the Pennsylvania Action 'by reason of' his former corporate office."); *see also Homestore*, 888 A.2d at 207 (examining allegations in underlying proceedings); *Brown v. LiveOps, Inc.*, 903 A.2d 324, 328–29 (Del. Ch. 2006) (looking at complaint from underlying litigation in conducting "by reason of the fact" analysis); *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *6-7 (Del. Ch. June 18, 2002) (Strine, V.C.) (conducting "by reason of" analysis to examine criminal and civil complaint).

[24] 829 A.2d 160 (Del. Ch. 2003) (Strine, V.C.).

therefore held that the individual had not been sued "by reason of" his activities as an agent.[25] There was one relatively limited claim, however, where the attorney had acted as the corporation's agent, and for this claim the individual met the "by reason of" test.[26] Given the nature of the claims at issue in *Fasciana I*, Chief Justice Strine held that the individual had to apportion his fees and expenses between the non-covered claims and the lone covered claim.[27]

Several factors distinguish *Fasciana I* from this case. *Fasciana I* involved corporate indemnification under Section 145 of the DGCL; this case involves contractual advancement under the LP Act. *Fasciana I* largely turned on the extent to which a corporation could indemnify an attorney on the theory that the attorney was acting as an agent; this case involves a contractual definition of Indemnitee that encompasses individuals acting in roles on behalf of the Partnership and VEREIT. The court in *Fasciana I* could parse readily among the plaintiff's roles and found that he was entitled to advancement only for a particular claim that involved the plaintiff acting as an indemnifiable agent. The claims in this case relate broadly to the plaintiffs' actions in multiple capacities, either on behalf of the Partnership, VEREIT, or AR Capital. *Fasciana I* is not an apt precedent for the current case.

---

[25] *Id.* at 167-73.

[26] *Id.* at 173-74.

[27] *Id.* at 175-76.

15

More apt precedents that involve advancement explain that

> in actions where only certain claims are advanceable, the Court generally will not determine at the advancement stage whether fee requests relate to covered claims or excluded claims, unless such discerning review can be done realistically without significant burden on the Court . . . . If fees cannot be apportioned with rough precision between advanceable claims and non-advanceable claims or the work was useful for both sets of claims, then the fees will be advanced in whole.[28]

To determine whether expenses incurred defending both covered and non-covered proceedings are subject to advancement, the operative test is: "Would the [d]isputed [expenses] have been incurred in defense of the [covered proceeding] even if there was no [non-covered proceeding]? If the answer is yes, then the [d]isputed [expenses] are advanceable."[29] "If . . . the fee requests relate to *both* advanceable claims and non-advanceable claims, *i.e.*, the work is useful for both types of claims, that work is entirely advanceable if it would have been done independently of the existence of the non-advanceable claims."[30] "[A]ny doubts should be resolved in favor of advancement."[31]

---

[28] *White v. Curo Tex. Hldgs., LLC* ("*Curo II*"), 2017 WL 1369332, at *10 (Del. Ch. Feb. 21, 2017) (internal quotation marks and citations omitted); *accord Holley v. Nipro Diagnostics, Inc.* ("*Holley II*"), 2015 WL 4880419, at *1 (Del. Ch. Aug. 14, 2015); *Danenberg v. Fitracks, Inc.* ("*Fitracks I*"), 2012 WL 11220, at *6 (Del. Ch. Jan. 3, 2012); *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 408 (Del. Ch. 2009).

[29] *Holley II*, 2015 WL 4880418, at *2; *accord Curo II*, 2017 WL 1369332, at *10; *cf. Fitracks I*, 2012 WL 11220, at *7 (using similar test for covered parties).

[30] *Mooney*, 2015 WL 3413272, at *6.

[31] *Id.*

Determining "whether work would have been incurred in the absence of the non-covered proceeding frequently requires a degree of judgment."[32] The "attorneys who coordinated [the] defense of the various actions are the most competent to opine as to what would have been required for the defense of the [covered proceeding], even if the [non-covered aspects] did not exist."[33] Absent "clear abuse," counsel's good faith certification is sufficient to support an award of advancements.[34]

At this stage in the case, it is neither possible nor warranted to parse the Civil Actions to determine what portions involve the Kellogg Plaintiffs acting for AR Capital and what portions involve the Kellogg Plaintiffs acting for VEREIT and the Partnership. AR Capital managed VEREIT, which served as the General Partner of the Partnership. The claims and roles are too intertwined, and the business of the Partnership and VEREIT permeates the Civil Actions. Consistent with this assessment, counsel has certified that "it is difficult, and in certain circumstances not practicable, to differentiate precisely which aspects of our legal services inured to the benefit of an Individual while serving in one capacity as opposed to another." [35]

---

[32] *Curo II*, 2017 WL 1369332, at *10.

[33] *Holley II*, 2015 WL 4880418, at *2.

[34] *Duthie v. CorSolutions Med., Inc.*, 2008 WL 4173850, at *2 (Del. Ch. Sept. 10, 2008); *accord Curo II*, 2017 WL 1369332, at *7.

[35] Figel Aff. Ex. A, ¶ 6.

17

For purposes of this summary advancement proceeding, counsel's certification is sufficient. A more "discerning review" of the billing records is not possible "without significant burden on the Court."[36] Counsel's assessment is logical and does not suggest "clear abuse."[37] Consequently, the Kellogg Plaintiffs are entitled to advancement for all of the work relating to the Civil Actions that Kellogg Hansen has performed on their behalf.

This conclusion does not resolve the Partnership's objection entirely, because Kellogg Hansen also represents AR Capital, which is not entitled to advancement. If AR Capital had retained its own counsel, then AR Capital's fees and expenses would not be subject to advancement.[38] When counsel represents both covered and non-covered persons, counsel must allocate fees and expenses depending on whether the activity benefitted the party holding the advancement right. "If a particular defense or litigation activity benefits [the indemnitee and other defendants in the underlying action], but [the indemnitee] would have raised or undertaken it himself if he were the sole . . . defendant, then [the entity] must advance 100% of the related fees and expenses."[39]

> If a particular defense or litigation activity only partially benefits [the indemnitee], then counsel must make a good faith allocation of the amount of fees and expenses that [the indemnitee] would have incurred if he were

---

[36] *Holley II*, 2015 WL 4880418, at *1.

[37] *Duthie*, 2008 WL 4173850, at *2; *accord Curo II*, 2017 WL 1369332, at *11.

[38] *See Curo II,* 2017 WL 1369332, at *8 ("When an advancement provision unambiguously fails to extend rights to a particular person, that person is not entitled to advancement.").

[39] *Danenberg v. Fitracks, Inc.* ("*Fitracks II*"), 58 A.3d 991, 997 (Del. Ch. 2012); *accord Curo II*, 2017 WL 1369332, at *10.

18

the sole . . . defendant. If a defense or litigation activity only benefits third-party defendants other than [the party entitled to advancement], then obviously [the entity] need not advance the related fees and expenses.[40]

In this case, Kellogg Hansen did not allocate any fees or expenses to AR Capital, asserting that "[m]uch of the work reflected in the Invoices benefitted one or more of the Individuals" and that "[t]here is a significant alignment of interests among the Clients."[41] This is not sufficient. AR Capital is not a covered person under the Partnership Agreement, so its expenses are not subject to advancement. While exact precision is not required, Kellogg Hansen must make a good faith determination regarding the amount of fees and expenses that the Kellogg Plaintiffs would have incurred if they were the sole defendants in the Civil Actions. Those fees and expenses are subject to advancement. Kellogg Hansen also must make a good faith determination regarding the amount of expenses that did not benefit the Kellogg Plaintiffs and which only benefitted AR Capital. Those fees and expenses are not subject to advancement. Kellogg Hansen shall explain the basis for its allocation and re-submit the fees and expenses for the Civil Actions using the *Fitracks* Procedures.

**B.     The Government Investigations**

The Partnership makes a similar argument about the Government Investigations, which it contends involved AR Capital, a non-covered party, and implicated the Kellogg Plaintiffs in both covered and non-covered capacities. The analysis here is more

---

[40] *Fitracks I*, 2012 WL 11220, at *7.

[41] Figel Aff. Ex. A, ¶ 6.

19

straightforward, because the Kellogg Plaintiffs have not shown at this stage that they were "parties" to the Government Investigations for purposes of receiving advancements.

Once again, the first question for analysis is whether the Government Investigations are covered proceedings. There is no dispute that the Government Investigations related to the operation of the Partnership, and the definition of a "proceeding" in the Partnership Agreement extends to "any and all . . . proceedings, civil, criminal, administrative or investigative." As "proceedings" that are "investigative,"[42] the Government Investigations can trigger advancement rights.

The problem for the plaintiffs is that for an individual to receive advancements, the individual must be a "party" to the covered proceeding. Unlike a civil or criminal case, it may not always be clear when an individual is a "party" to an investigative proceeding. The requirement is clearly met if the party conducting the investigation has said that the individual is a target of the investigation. In my view, it also is met if the party conducting the investigation seeks documents or other information from the individual or interviews the individual. But for purposes of the advancement right in this case, it is *not* met if an individual only believes, however reasonably, that the individual could become a target of the investigation. The language of the Partnership Agreement supports this interpretation because it distinguishes between coverage for advancement, which requires that the

_____

[42] P'ship Agreement at 51.

20

Indemnitee be a party to the proceeding, and coverage for indemnification, which extends to situations where the Indemnitee is "threatened" with being made a party.

The Partnership contends that the Kellogg Plaintiffs cannot receive advancements for amounts incurred by Kellogg Hansen for reviewing documents in response to subpoenas issued to AR Capital. The Kellogg Plaintiffs have shown that the SEC subpoena was issued in connection with the investigation of VEREIT and inquired into the Kellogg Plaintiffs' activities at VEREIT.[43] The plaintiffs also have explained why the subpoenas threatened the Kellogg Plaintiffs with being made party to the investigations.[44] But for purposes of advancement under the Partnership Agreement, that is not enough. The Kellogg Plaintiffs must also show that they are parties to the investigation, which they have not done.

Summary judgment on this issue is denied. The Kellogg Plaintiffs may be able to show at a later stage that they were parties to the Government Investigations such that advancements should be provided.

## C.    The Partnership's Unilateral Imposition Of Terms

The Partnership has sought to impose additional terms on the plaintiffs' advancement rights. "Advancement is a contractual right governed by the terms of the operative agreement."[45] When a company has provided a covered person with a mandatory

---

[43] Brauerman Aff. Ex. F.

[44] *See Curo II*, 2017 WL 1369332, at *7.

[45] *Id.*

advancement right that is conditioned only on specific contractual requirements, such as an undertaking to repay, the company "does not have the right to impose any terms or conditions on . . . advancement other than an undertaking to repay."[46] An entity cannot, for example, later demand that the covered person show "proof of an ability to repay, or even the posting of a secured bond."[47]

In this case, the Partnership sought to require compliance with a set of billing guidelines, including an obligation to create and adhere to a litigation budget. Section 6.03(b) of the Partnership Agreement does not mention billing guidelines or litigation budgets. Having a party who is entitled to advancement comply with billing guidelines might be a good idea, and the Partnership could have built that obligation into the advancement provision. But Section 6.03(b) is silent on the issue. Instead, it grants mandatory advancement conditioned only on a written undertaking and written affirmation. The Partnership cannot now impose different obligations on the plaintiffs unilaterally.[48]

---

[46] *Blankenship v. Alpha Appalachia Hldgs., Inc.*, 2015 WL 3408255, at *26 (Del. Ch. May 28, 2015).

[47] *Reddy*, 2002 WL 1358761, at *4; *accord In re Cent. Banking Sys., Inc.*, 1993 WL 183692, at *4 (Del. Ch. May 11, 1993) ("The only condition imposed by the By-laws is that the recipient furnish an undertaking to repay the amounts advanced . . . . That condition has been satisfied. Neither that provision nor any provision of Delaware law requires that the undertaking be secured or be accomplished by a showing of the indemnitee's financial responsibility.").

[48] *Curo II*, 2017 WL 1369332, at *7-8 (rejecting attempt by entity to condition advancement on counsel providing a budget and a work plan).

22

The Partnership also has demanded an across-the-board, 10% discount from all law firms involved in the litigation. It subsequently withheld advancements from the Kellogg Plaintiffs because many of Kellogg Hansen's invoices did not reflect the 10% discount. Section 6.03(b) does not give the Partnership the power to impose the 10% discount, nor the ability to condition payment on an Indemnitee agreeing to the discount.

In another variant of the same issue, the Partnership withheld advancements on the grounds that Paul Weiss increased its rates during the second year of Schorsch's representation. The Partnership has claimed that law firms generally do not increase rates in multi-defendant actions during the second year of litigation. Perhaps that is true, but that is not something contemplated by Section 6.03(b). The Partnership cannot impose this condition unilaterally on an Indemnitee.

Summary judgment on these issues is granted in favor of the plaintiffs.

## D.     The Reallocation Of Amounts To The Derivative Actions

The Partnership argues that the Kellogg Plaintiffs are seeking advancements for fees in the Derivative Actions that have already been paid. During discussions concerning the advancement disputes, the Partnership advised Kellogg Hansen that a payment of $312,000 that the Partnership made in December 2015 should be considered as applied against the Derivative Actions, which would cover "nearly all" of the costs for the Derivative Actions.

The Partnership cannot reallocate previously advanced funds under the terms of the Partnership Agreement. Even if it could, arguing that it satisfied its payment obligation by paying "nearly all" of the fees and expenses for the Derivative Actions is no defense. Summary judgment is granted for the plaintiffs on this issue. The Partnership shall advance

23

the total amount of fees and expenses for the Derivative Actions. Absent agreement of the parties, the $312,000 shall remain attributed to its original purpose.

## E. Claims of Partial Payment From Other Sources

The Partnership withheld advancements to Kellogg Hansen and Paul Weiss on the grounds that the plaintiffs received payments from other sources. According to the Partnership, the plaintiffs entered into settlement agreements with one of AR Capital's insurers that resulted in the insurer paying a portion of their defense costs. The Partnership alleges that it asked about the terms of the settlements, but the plaintiffs refused to provide any details. In response, the Partnership took a blanket deduction from the plaintiffs' advancement requests.

This incident exemplifies how a working relationship can break down. The parties should have shared information and reached agreement on a path forward. Instead, both sides took unreasonable positions. This aspect of the dispute cannot be resolved on a motion for summary judgment because there are disputed issues of material fact.

## F. The Reasonableness of the Plaintiffs' Fees

Section 6.03(b) of the Partnership Agreement requires that the Partnership advance "reasonable expenses."[49] The Partnership contends that Schorsch's expenses are not reasonable because Paul Weiss overstaffed his defense and charged unreasonable rates for staff attorneys. The Partnership also contends that both Paul Weiss and Kellogg Hansen

---

[49] P'ship Agreement § 6.03(b).

submitted invoices with vague descriptions of work that do not allow the Partnership to decipher whether the hours were billed for the benefit of the plaintiffs in their covered capacities at VEREIT as opposed to their non-covered capacities at AR Capital.

The party seeking advancement "bears the burden of justifying" the amounts sought.[50] Rule 88 provides that

> [i]n every case in which an application to the court is made for a fee or for reimbursement for expenses or services[,] the Court shall require the applicant to make an affidavit or submit a letter, as the Court may direct, itemizing (1) the amount which has been received, or will be received, for that purpose from any source, and (2) the expenses incurred and services rendered, before making such an allowance . . . .[51]

The court has discretion in determining the extent of the submissions required under Rule 88.[52]

Advancement is a form of contractual fee-shifting.[53] When determining what constitutes a reasonable amount under a contractual provision, the Delaware Supreme Court has instructed the trial courts "to consider the factors set forth in the Delaware Lawyers' Rules of Professional Conduct."[54] They are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

---

[50] *Fitracks II*, 58 A.3d at 995.

[51] Ct. Ch. R. 88.

[52] *Cohen v. Cohen*, 269 A.2d 205, 207 (Del. 1970).

[53] *See Fitracks II*, 58 A.3d at 996.

[54] *Mahani v. EDIX Media Gp., Inc.*, 935 A.2d 242, 245–46 (Del. 2007).

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.[55]

Trial courts also should consider "whether the number of hours devoted to litigation was excessive, redundant, duplicative or otherwise unnecessary."[56] "These factors provide the framework for evaluating the reasonableness of the amounts for which advancement is sought."[57]

Determining the reasonableness of the amounts sought, however, "does not require that this Court examine individually each time entry and disbursement."[58] Analyzing specific invoices typically "would neither be useful nor practicable."[59] "[A]n arm's-length

---

[55] Del. Lawyers' R. Prof'l Conduct 1.5(a).

[56] 935 A.2d at 247-48 (internal quotation marks omitted).

[57] *Curo II*, 2017 WL 1369332, at *5; *accord Fitracks II*, 58 A.3d at 996-97; *Tafeen v. Homestore, Inc.*, 2005 WL 789065, at *2 (Del. Ch.), *aff'd*, 888 A.2d 204 (Del. 2005).

[58] *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010); *accord Blank Rome, LLP v. Vendel*, 2003 WL 21801179, at *8-10 (Del. Ch. Aug. 5, 2003) (rejecting alleged requirement of line-item review).

[59] *Weichert Co. of Pa. v. Young*, 2008 WL 1914309, at *2 (Del. Ch. May 1, 2008).

agreement, particularly with a sophisticated client, . . . can provide an initial 'rough cut' of a commercially reasonable fee."[60] If a party cannot be certain that it will be able to shift expenses at the time the expenses are incurred, the prospect that the party will bear its own expenses provides "sufficient incentive to monitor its counsel's work and ensure that counsel [does] not engage in excessive or unnecessary efforts."[61]

"Determining reasonableness of amounts sought also does not require the Court to assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic."[62] "For a Court to second-guess, on a hindsight basis, an attorney's judgment . . . is hazardous and should whenever possible be avoided."[63] A party's expenses are reasonable if they were "actually paid or incurred[,] . . . were . . . thought prudent and appropriate in the good faith professional judgment of competent counsel[,] and were charge[d] . . . at rates, or on a basis, charged to others for the same or comparable services under comparable circumstances."[64]

---

[60] *Wis. Inv. Bd. v. Bartlett*, 2002 WL 568417, at *6 (Del. Ch.), *aff'd*, 808 A.2d 1205 (Del. 2002).

[61] *Aveta*, 2010 WL 3221823, at *6; *accord Arbitrium (Cayman Islands) Handels AG v. Johnston*, 1998 WL 155550, at *2 (Del. Ch.) (considering, when evaluating reasonableness, that client faced prospect of bearing full cost of litigation), *aff'd*, 720 A.2d 542 (Del. 1998).

[62] *Fitracks II*, 58 A.3d at 997.

[63] *Arbitrium*, 1998 WL 155550, at *4.

[64] *Delphi Easter*, 1993 WL 328079, at *9.

The summary nature of an advancement proceeding further counsels against granular review. "[D]etailed analysis . . . is both premature and inconsistent with the purpose of a summary [advancement] proceeding."[65] "The function of [an] advancement case is not to inject this court as a monthly monitor of the precision and integrity of advancement requests."[66] Consequently, the advancement stage "is not the proper stage for a detailed analytical review of the fees, whether in terms of the strategy followed or the staffing and time committed."[67] Nor is it a vehicle for a party that committed to provide advancements to manufacture "persnickety disputes over the reasonableness of the attorneys' fees sought."[68] "Unless some gross problem arises, a balance of fairness and efficiency concerns . . . counsel[s] deferring fights about details until a final indemnification proceeding."[69]

Just because the court will not review each line item individually at the advancement stage does not mean that the party seeking advancements can play fast and loose with its

---

[65] *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 510 (Del. 2005).

[66] *Fasciana I*, 829 A.2d at 177.

[67] *Duthie*, 2008 WL 4173850, at *2.

[68] *Blankenship*, 2015 WL 3408255, at *28.

[69] *Fasciana I*, 829 A.2d at 177; *see Reinhard & Kreinberg v. Dow Chem. Co.*, 2008 WL 868108, at *5 (Del. Ch. Mar. 28, 2008) ("[T]his Court does not relish and will not perform the task of playground monitor, refereeing needless and inefficient skirmishes in the sandbox [over advancements].").

requests or treat the advancement right as a blank check. Plaintiffs' counsel must make a good faith determination regarding the fees and expenses to which its clients are entitled.[70]

### 1. Rates Charged for Staff Attorneys

The Partnership objects that Paul Weiss charged hourly rates for its staff attorneys that substantially exceeded the rates charged by other law firms involved in the Underlying Matters. Fees and expenses should be charged "at rates, or on a basis, charged to others for the same or comparable services under comparable circumstances."[71] The discrepancy between the rates Paul Weiss charged for its staff attorneys and the rates that other firms charged is sufficient to raise a question of fact regarding the reasonableness of this aspect of Paul Weiss's fees. The record does not contain other evidence regarding the rates charged for staff attorneys that might support a finding of reasonableness at this stage. Summary judgment is denied to the extent the plaintiffs seek to recover amounts that Paul Weiss charged for staff attorneys. The parties will have to develop the record further on this issue.

### 2. Alleged Overstaffing and Hours Worked

The Partnership withheld advancements on the grounds that Paul Weiss allegedly overstaffed its matters. In support of its objection, the Partnership cites both the number of attorneys that Paul Weiss staffed on the matters and the number of hours those attorneys incurred. The Partnership argues that the amount of work that Paul Weiss performed

---

[70] *Fitracks I*, 2012 WL 11220, at *7.

[71] *Delphi Easter*, 1993 WL 328079, at *9.

29

exceeded both the firm's internal projections and the total resources expended on the defense of Brian Block, another defendant.

At this stage, the Partnership has not raised sufficient questions about Paul Weiss's staffing and hours to support an inference of gross abuse. A senior partner from Paul Weiss submitted a sworn affidavit attesting to the reasonableness of the fees and expenses sought. The Partnership's objections would require this court to second-guess the judgment of the senior attorneys at Paul Weiss who oversaw the matters and are best positioned to determine whether the work was necessary.

The Partnership's reference to the fees and expenses that Block incurred does not raise a question of material fact. Block primarily defended against criminal charges; his role in the Civil Actions was limited, and he largely relied on the efforts of other counsel. Block's situation is sufficiently different from Schorsch's that comparing their respective fees does not raise questions about Paul Weiss's approach.

Paul Weiss does not have a blank check. If Schorsch ultimately is not entitled to indemnification, then he will have to repay the amounts that Paul Weiss has charged, which gives him an incentive to monitor Paul Weiss's bills. It is also possible, as with the staff attorney rates, that the Partnership could point to certain practices that would raise questions and potentially result in Schorsch bearing fees and expenses personally. In the context of a summary advancement proceeding, the attorney certification is sufficient on the question of staffing. A more detailed parsing of Paul Weiss's work is deferred to the indemnification stage. Summary judgment is granted in favor of the plaintiffs on the Partnership's objections to Paul Weiss's levels of staffing and hours worked.

30

### 3. Descriptions Of Work

The Partnership also withheld advancements on the grounds that the attorneys' invoices failed to provide sufficient detail to support the work performed. The Partnership similarly objects to invoices from third-party vendors. Reasonableness is the standard for measuring the sufficiency of both attorney invoices and third-party invoices. The Partnership argues that when parties are submitting invoices for a third party to pay, they should have to provide more detail, but that is not a step that Delaware law requires. If parties want particular levels of detail or a standard other than reasonableness, they can build those terms into their advancement provisions.

The court has reviewed the invoices that plaintiffs' counsel submitted. The descriptions of the work performed on the attorney invoices are customary and reasonable. The Partnership cannot withhold advancements by broadly alleging that the descriptions are vague. Summary judgment is granted in the plaintiffs' favor on this issue.

With respect to the third-party invoices billed by Kellogg Hansen, the Partnership produced certain invoices for discovery services that contained basic descriptions of the services performed and a case name and matter number.[72] The matter names provide enough information for the parties to categorize whether the work was performed for an advanceable matter, such as the Civil Matters, or a non-advanceable matter, such as the

---

[72] *See, e.g.*, Defs.' Answering Br. Exs. C, O-P.

Government Investigations.[73] The third-party invoices also describe the work performed, such as deduplicating, transferring data, and culling.[74] A senior partner at Kellogg Hansen submitted a sworn affidavit testifying to the reasonableness of the third-party invoices. At this stage of the proceedings, the Partnership has not raised a sufficient question about Kellogg Hansen's third-party vendor invoices to support an inference of gross abuse. Summary judgment is granted in favor of the plaintiffs on the Partnership's objection to third-party vendor invoices for matters in which the Kellogg Plaintiffs are entitled to advancement.

## G.     Procedures Going Forward

Going forward, the senior member of the Delaware bar representing each side will assume personal responsibility for overseeing the advancement process. Unless modified by stipulation, the parties will adhere to the *Fitracks* Procedures in order to determine the amount of advancements presently due. The *Fitracks* Procedures contemplate the following steps:

1. Before the 10th calendar day of each month, the plaintiffs' counsel will submit an advancement demand for fees and expenses incurred during the previous month. Any fees or expenses not included in the demand are deemed waived. The advancement demand will include the following:

---

[73] *See id.* Ex. C.

[74] *See id.* Exs. O-P.

32

a. A detailed invoice identifying the fees and expenses for which advancement is requested. The invoice shall provide for each time entry the date, timekeeper, billing rate, task description, time incurred, and amount charged. The invoice shall identify with detail for each expense the date of the charge, its nature, and the amount incurred.

b. A certification signed by the senior member of the Delaware bar representing the plaintiffs attesting that (i) he personally reviewed the invoice, (ii) each time entry and expense falls within the scope of the plaintiffs' advancement rights, (iii) in his professional judgment, the fees and expenses charged are reasonable in light of the factors listed in Rule 1.5(a), and (iv) the services rendered were thought prudent and appropriate in his good faith professional judgment.

2. Before the 20th calendar day of the month, the Partnership's counsel will respond to the advancement demand in writing. The response shall identify each specific time entry or expense to which the Partnership objects and explain the nature of the objection. The senior member of the Delaware bar representing the Partnership shall certify that (i) he personally reviewed the advancement demand and (ii) in his professional judgment, the disputed fees and expenses are not reasonable or otherwise fall outside the scope of the advancement right. The response shall cite any legal authority on which the Partnership relies. Any objection not included in the response is deemed waived.

3. The Partnership shall pay the undisputed amount contemporaneously with the response. If the Partnership disputes more than 50% of the amount sought in any advancement demand, the Partnership shall pay 50% of the amount sought and the plaintiffs' counsel shall hold the amount exceeding the undisputed amount in its escrow account pending resolution of the dispute regarding such portion.

4. Before the 25th calendar day of each month, the plaintiffs' counsel will reply to the advancement response in writing and provide supporting information and authority.

5. Before the last calendar day of the month, the senior members of the Delaware bar representing each side will meet, in person, and confer regarding any disputed amounts. Any additional advancements that result from the meet-and-confer session will be paid with the next month's payment of undisputed amounts.

6. Not more frequently than quarterly, the plaintiffs may file an application pursuant to Court of Chancery Rule 88 seeking a ruling on the disputed amounts. Briefing shall consist of a motion, an opposition filed within fifteen days of the motion, and a reply filed within ten days of the opposition. The plaintiffs and the Partnership shall not raise any new arguments not previously raised with the other side in the applicable demand, response, reply, or meet-and-confer. The plaintiffs and the Partnership only shall cite authorities identified in writing in the applicable demand, response, or reply. The Court will determine if a hearing is warranted.

7. If the Court grants an application in whole or in part, then pre-judgment interest is due on the adjudicated amount from the date of the applicable advancement demand. In addition, in parallel with the next advancement demand, the plaintiffs may

34

demand indemnification for the fees and expenses incurred in connection with the granted application, proportionate to the extent of success achieved. The parties shall address the indemnification demand in the same manner as the advancement demand. Except in connection with a successful application, the plaintiffs shall not seek or receive advancement or indemnification for time spent preparing invoices and advancement demands, addressing responses, or conferring regarding advancement requests.[75]

## H.    Fees on Fees

The plaintiffs are entitled to an award of fees on fees in light of their success to date in pursuing this action for advancement.[76] When a plaintiff seeks fees on fees in a successful advancement action, he is "actually seeking indemnification and not an advancement. He is partially entitled to that indemnification because he has already partially succeeded in litigation in which he was a party."[77] When an indemnitee achieves only limited success, the award of fees will be reduced proportionately to its entitlement and the reasonableness of its fees.[78]

---

[75] *See generally Fitracks II*, 58 A.3d at 1002-04.

[76] *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002); s*ee also* 1 David A. Drexler et al., *Delaware Corporation Law and Practice* 16-10 (2016).

[77] *Fasciana v. Elec. Data Sys. Corp.* ("*Fasciana II*"), 829 A.2d 178, 182 (Del. Ch. 2003) (Strine, V.C.) (quoting *Cochran*, 809 A.2d at 561).

[78] *Id.* at 184-85.

It is highly likely that the plaintiffs will be entitled to some amount of fees on fees. It is not yet possible to determine the amount. As part of the *Fitracks* Procedures, the plaintiffs should include in their requests the fees incurred for enforcing their advancement rights.

## IV.    CONCLUSION

Partial summary judgment is entered for the plaintiffs. Consistent with the analysis in this decision, the parties will follow the *Fitracks* Procedures to determine the specific advancements that are due.

36