ADVANCED MINING SYSTEMS,
INCORPORATED, Plaintiff–
Counterclaim Defendant,

v.

Richard A. FRICKE, Defendant–
Counterclaim Plaintiff,

v.

Gary LUTIN, Bruce A. Cassidy, Earl L.
Romsberg, James B. Pitts, U.L. Uebel-
hoer and Standard Industrial Systems,
Inc., a Delaware corporation, Counter-
claim Defendants.

Civ. A. No. 11823.

Court of Chancery of Delaware,
New Castle County.

Submitted: May 19, 1992.
Decided: Aug. 4, 1992.

Lawrence A. Hamermesh, and Jon E.
Abramczyk, of Morris, Nichols, Arsht &
Tunnell, Wilmington, for Advanced Min.
Systems, Inc., Gary Lutin, Earl L. Roms-
berg, James B. Pitts, U.L. Uebelhoer and
Standard Indus. Systems, Inc.

Wayne N. Elliott, Michael Hanrahan, and
Ronald A. Brown, Jr., of Prickett, Jones,
Elliott, Kristol & Schnee, Wilmington, for
Richard A. Fricke.

Richard D. Kirk, of Morris, James, Hitch-
ens & Williams, Wilmington, for Bruce A.
Cassidy.

## OPINION

ALLEN, Chancellor.

In this suit, Advanced Mining Systems,
Inc., a Delaware corporation ("AMS"),
charges Richard A. Fricke, its former Pres-
ident, with breaches of loyalty to the corpo-
ration while he was in office. Mr. Fricke
has now moved to compel plaintiff to ad-
vance expenses reasonably incurred by him
in connection with the defense of this suit.
He claims a present right to the "interim
advancement of indemnification payments"
under Section 145 of the Delaware General
Corporation Law and under AMS's by-laws.
I put aside the procedural oddity of the
motion[1] and turn to a recitation of back-
ground facts that appear to be undisputed.

### Background

AMS manufactures and distributes roof-
support systems for underground coal
mines; fabricates related steel products
and tools and dies; and operates a trucking
business. It was formed in 1984 as a re-
sult of a leveraged buy-out of Republic
Corporation's "Systems" division.

---

1. This "motion" seeks an award of money that
would, in effect, constitute a final judgment on
the legal claim that Mr. Fricke is entitled to on-
going advancement of his reasonable expenses.
While a fairly elaborate counterclaim has been
pleaded—including a count alleging that he is
entitled to indemnification—the counterclaim
does not mention a claimed right to advance-
ments. In order to try to advance the litigation
both fairly and efficiently, I will construe the
present motion as a motion for partial summary
judgment on the indemnification count of the
counterclaim although I entertain some doubts
that such treatment is technically correct.

Richard Fricke was General Manager of one of the Republic plants that was to be spun-off in the creation of AMS. Fricke apparently was one of the promoters of the LBO. He was one of the principal shareholders of AMS, a member of its board and was designated AMS's first President. His tenure as President and director, however, ended a little more than a year later in March 1986, following his six month leave of absence from those positions. After leaving AMS's management, Mr. Fricke continued to work for the corporation as a consultant for another year. Since March 1987, his sole connection with AMS apparently has been as a shareholder.

On November 16, 1990, AMS filed the present suit against Fricke, alleging that, while he was President of the company and a director, Fricke had violated fiduciary duties he owed to the company.[2] Fricke has since filed counterclaims alleging that one Gary Lutin,[3] together with other counterclaim defendants, primarily present or past AMS directors, attempted to force Fricke out of AMS and that, by such conduct, Lutin and the other counterclaim defendants (1) violated fiduciary duties they owed to Fricke; (2) violated AMS's by-laws; and (3) breached a Stock Purchase Agreement among Fricke, Lutin, AMS and others.

* * *

Section 145 of the Delaware General Corporation Law states the mandatory and permissive scope of indemnification by a Delaware corporation of the losses or expenses of an officer, director, employee or agent of the corporation incurred by reason of holding any such position. While the permissive authority to indemnify its directors, officers, etc., may be exercised by a corporation's board of directors on a case-by-case basis, in fact most corporations and virtually all public corporations have by by-

law exercised the authority recognized by Section 145 so as to mandate the extension of indemnification rights in circumstances in which indemnification would be permissible under Section 145. Such provisions serve obvious corporate interests. *Merritt–Chapman & Scott Corp. v. Wolfson*, Del.Super., 321 A.2d 138 (1974).

This motion does not involve the question whether or under what circumstances Mr. Fricke will be entitled to indemnification by AMS for his expenses in defending this suit or for the amount of any judgment entered against him. That matter will be governed by Section 145(b) and (c) of the Delaware General Corporation Law and must await a determination of the litigation.

What is involved here is the question *when* payments on account of a claim of indemnification must be made. Mr. Fricke seeks an order requiring the corporation to advance his reasonable litigation expenses now. He is willing to provide an unsecured undertaking to repay such amounts if it is ultimately found that he was not entitled to indemnification of such expenses, after the litigation is concluded. Not surprisingly, the corporation finds this an unappealing proposal. The board of directors has determined that it has discretion to decide whether such an advance should be made and that it is not in the corporation's interest to extend this credit to Mr. Fricke. Fricke contends that the corporation's by-laws legally obligate it to do so. Which view is correct is the legal issue that the motion presents.

* * *

Advancement of indemnifiable expenses is a subject treated by subsection (e) of Section 145 of our General Corporation Law. It provides, in relevant part, as follows:

2. Among other things, the complaint alleges that Fricke (1) used AMS employees for his personal benefit; (2) improperly extended AMS credit for his personal benefit; (3) approved the sale of assets for inadequate consideration; (4) approved improper expenses; (5) wasted assets; (6) failed to exercise honest and reasonable business judgment; and (7) refused to account fully to AMS directors. AMS seeks damages

and costs and expenses, including attorneys' fees.

3. Counterclaim defendant Gary Lutin, an investment banker and also one of the LBO's promoters, similarly became a director and a principal shareholder of AMS at the time of the leveraged buy-out. He continues as a director.

**§ 145. Indemnification of officers, directors, employees and agents; insurance.**

. . . . .

(e) Expenses (including attorneys' fees) incurred by an officer or director defending any civil, criminal, administrative or investigative action, suit or proceeding *may be paid by the corporation in advance* of the final disposition of such action, suit or proceeding *upon receipt of an undertaking* by or on behalf of such director or officer *to repay* such amount if it shall ultimately be determined that he is not entitled to be indemnified by the corporation as authorized in this Section. (emphasis added)

With respect to indemnification rights, AMS's certificate of incorporation and by-laws provide in virtually identical language that:

The Corporation *shall indemnify* its directors, officers, employees and agents *to the extent permitted by the General Corporation Law of Delaware.* (emphasis added.)

(Charter Article TWELFTH).[4]

Thus the question here may be restated to be whether a mandate to "indemnify" includes an obligation to advance expenses prior to a determination whether indemnification is permitted or required. In my opinion it does not.

Whether it is in a corporation's interest to indemnify a director or officer for an expense, loss or liability covered by Section 145(a) or (b) is fundamentally different from the question whether it is in the corporation's interest to advance arguably indemnifiable litigation expenses before the proceeding in which expenses are incurred has terminated. The decision to advance litigation expenses is in some respects similar to the decision to extend indemnification rights—it also might act as an incentive to serve as a director—but it is also in some respects quite different. In making a decision to advance expenses to a director or

officer, the corporation is not extending the amount by which it may be legally liable, as it does when it extends indemnification rights. The right to be indemnified for expenses will exist (or will not) depending upon factors quite independent of the decision to advance expenses. Thus, the decision to extend advancement rights should ultimately give rise to no net liability on the corporation's part. The corporation maintains the right to be repaid all sums advanced, if the individual is ultimately shown not to be entitled to indemnification. Thus the advancement decision is essentially simply a decision to advance credit.

Recognizing this fact, the statute authorizes such transactions, but requires "receipt of an undertaking ... to repay ... if it shall ultimately be determined that [the individual] is not entitled to be indemnified...." This undertaking need not be secured. Section 145(e) leaves to the business judgment of the board the task of determining whether the undertaking proffered in all of the circumstances, is sufficient to protect the corporation's interest in repayment and whether, ultimately, advancement of expenses would on balance be likely to promote the corporation's interests.

A by-law mandating the advancement of funds on the receipt of an undertaking to repay deprives the board of an opportunity to evaluate the important credit aspects of a decision with respect to advancing expenses. While given the evolution of Section 145(e), I assume such a by-law would be valid,[5] the better policy, more consistent with the provisions of Section 145(e), is to require any such by-law expressly to state its intention to mandate the advancement by the corporation of arguably indemnifiable expenses under subsection (e).

Because I consider indemnification rights and rights to advancement of possibly indemnifiable expenses to be legally quite distinct types of legal rights, I cannot conclude that the language of this by-law,

---

**4.** Article 7, section 7 of the by-laws differs only in the order in which it sets forth the parties to be indemnified.

**5.** *See e.g.* Drexler, Black & Sparks, *Delaware Corporation Law and Practice,* § 16.04 at 16–14 (1992).

which requires AMS "to indemnify," was intended to deprive the board of its function under Section 145(e) to evaluate the corporation's interest with respect to advancement of expenses. It is notable that when this by-law was adopted and when Mr. Fricke served as President of AMS, Section 145(e) stated that advancement decisions were to be made "in the specific case." Thus, as a practical matter, it is extremely unlikely that a reasonable person could then have assumed that a right to advancement in every case had been created by the AMS by-law. Moreover, even given the 1986 amendment deleting that language from the statute, I conclude that the reading that I give the words "to indemnify" in the AMS certificate and by-laws is more in keeping with the tenor of subsection (e) than the alternative interpretation would be.[6]

No case has been cited that decides the question here presented, except *TBG, Inc. v. Bendis*, C.A. No. 89–2423–01, 1991 W.L. 34199 (D.Kan. Feb. 19, 1991). I cannot accept the reasoning of that case as correct, however. There the corporation's by-laws contained a provision permitting advancement "as authorized by the board of directors in the specific case...." Notwithstanding that provision, the court held that a mandatory right of indemnification "to the full extent permitted [by the Delaware General Corporation law]" included a mandatory right to advancement. Through this broad interpretation the court negated the effect of the "specific case" by-law language. While the "specific case" requirements had been removed from the statute by the time of the TBG decision, I cannot agree that the corporation's by-laws were for that reason alone amended.

\* \* \*

Should the board of directors or shareholders, for reasons they regard as sound, wish to create a right of the type here asserted that decision may be expressed easily enough in the company's by-laws. AMS, however, has not done so in my opinion.

---

6. *Cf. Citadel Holding Corporation v. Roven*, Del. Supr., 603 A.2d 818, 822 (1992) (recognizing the distinction between rights to indemnification and rights to advancement).

Therefore, the pending motion will be denied.