IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| INVICTUS GLOBAL MANAGEMENT, LLC, INVICTUS SPECIAL SITUATIONS I GP, LLC, CINDY CHEN DELANO, and AMIT PATEL, | § § § § § | No. 283, 2025 Court Below—Court of Chancery of the State of Delaware |
| Defendants-Counterclaim Plaintiffs Below, Appellants, | § § § | C.A. No. 2023-1099 |
| v. | § § | |
| INVICTUS SPECIAL SOLUTIONS MASTER I, L.P., | § § § | |
| Plaintiff-Counterclaim Defendant Below, Appellee. | § § | |

Submitted: January 28, 2026
Decided: April 13, 2026

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices, constituting the Court *en Banc*.

Upon appeal from the Court of Chancery. **REVERSED.**

Rudolf Koch, Esquire, Robert L. Burns, Esquire, Susan Hannigan Cohen, Esquire, Nicole M. Henry, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, Lars C. Golumbic, Esquire, GROOM LAW GROUP, Washington, District of Columbia for *Defendants-Counterclaim Plaintiffs*, *Appellants Invictus Global Management*, *LLC*, *Invictus Special Situations I GP*, *LLC*, *and Amit Patel.*

Todd C. Schiltz, Esquire, Oderah C. Nwaeze, Esquire, Renèe M. Dudek, Esquire, FAEGRE DRINKER BIDDLE & REATH LLP, Wilmington, Delaware, Stephanie L. Gutwein, Esquire (*argued*), FAEGRE DRINKER BIDDLE & REATH LLP, Indianapolis, Indiana for *Defendant-Counterclaim Plaintiff, Appellant Cindy Chen Delano.*

Ronald N. Brown, III, Esquire, Aaron S. Applebaum, Esquire (*argued*), DLA PIPER LLP (US), Wilmington, Delaware for *Appellee/Plaintiff Invictus Special Situations Master I, L.P.*

**VALIHURA**, Justice:

*INTRODUCTION*

This case concerns whether advancement of litigation expenses for the defense of state-law claims brought in state court impermissibly relieves former ERISA fund fiduciaries of responsibility or liability in violation of the Employee Retirement Income Security Act of 1974 ("ERISA").[1]  Defendants served as fiduciaries of an ERISA fund and received certain rights to indemnification and advancement from the fund under its governing documents.  In October 2023, Defendants were removed from their positions as ERISA fiduciaries and in October 2023, the fund brought state-law claims in state court alleging that Defendants breached their state-law fiduciary duties in violation of the fund's governing documents.

Defendants brought a counterclaim seeking an advance of defense costs under the fund's governing documents.  In response, the fund asserted that advancement from fund assets was barred by ERISA.  ERISA section 1110 provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."[2]  The Court of Chancery determined that, based on federal case law and United States Department of Labor ("DOL") guidance, section 1110 renders "void any contractual provision that purports to allow an ERISA-regulated plan to indemnify and

---

[1] 29 U.S.C. § 1001 *et seq*.

[2] *Id.* § 1110.

2

advance funds to an ERISA fiduciary using plan assets."[3]  Thus, the court held that even though the former fund fiduciaries were entitled to advancement under Delaware law, the provisions enabling advancement to the former fund fiduciaries from ERISA assets "were invalid at the time they were entered into."[4]  The court also stated that a bar on advancement is particularly appropriate where Defendants have not shown an ability to repay advanced sums.

On interlocutory appeal, Defendants argue that advancement is not barred by ERISA because (1) the requested advancement for state-law claims, which is subject to recoupment, would not relieve ERISA fiduciary duty or responsibility and (2) advancement is not contingent on a showing of ability to repay under either the fund's governing documents or ERISA.  We agree.  Therefore, we **REVERSE** the Court of Chancery's holding that the advancement sought here for state-law claims is barred by ERISA.

## I.  FACTUAL AND PROCEDURAL HISTORY[5]

### A. The Fund and the Fund's Governing Documents

Plaintiff-appellee, Invictus Special Situations Master I, L.P. (the "Fund"), is a privately held fund formed to make and hold investments.[6]  ERISA investors invested in the Fund, and the Fund contains ERISA assets.  Defendants-appellants are Invictus Global

---

[3] Opening Br. On Appeal of Defs.-Counterclaim Pls. Below/Appellants Ex. B [hereinafter "ERISA Defense Ruling"] at 13.

[4] *Id.* at 21.

[5] Unless otherwise indicated, we take the essential facts from the Court of Chancery's order certifying an interlocutory appeal.  *Invictus Special Situations Master I, L.P. v. Invictus Glob. Mgmt., LLC* (*Interlocutory Appeal Order*), 2025 WL 1795946, at *1–4 (Del. Ch. June 30, 2025).

[6] *Id.* at *1.

Management, LLC ("IGM"), Invictus Special Situations I GP, LLC ("Invictus GP"), Amit Patel, and Cindy Chen Delano (collectively, with IGM, Invictus GP, and Patel, "Defendants"). Delano and Patel owned and controlled IGM and Invictus GP. IGM served as the Fund's management company via a management agreement (the "Management Agreement"), and Invictus GP served as the Fund's general partner via a partnership agreement (the "Partnership Agreement").

Both the Management Agreement and the Partnership Agreement are Fund governing documents under which Delano and Patel "agreed to manage Fund assets as ERISA plan assets; for IGM to serve as a qualified professional asset manager; and for Invictus GP to be subject to the standard of a fiduciary under Title I of ERISA."[7] Invictus GP also specifically agreed to conduct its affairs and the affairs of the Fund so that (1) the Fund "will not engage in any non-exempt prohibited transaction with respect to an ERISA

---

[7] *Id.* Section 11.05(b) of the Partnership Agreement states in relevant part:

> The General Partner acknowledges that as a manager of ERISA Plan Assets it will be subject to the standard of care of a fiduciary of an employee benefit plan under ERISA with respect to ERISA Partners who are subject to Title I of ERISA. As such, it will be a 'fiduciary' with respect to ERISA Partners who are subject to Title I of ERISA or the prohibited transaction provisions of the Code.

App. to Opening Br. On Appeal of Defs.-Counterclaim Plaintiffs Below/Appellants at A108, 146 [hereinafter "A__"] (Partnership Agreement at 4, 42) (defining Invictus GP as the "General Partner"). Section 2 of the Management Agreement states in relevant part:

> In performing the services pursuant to this Agreement, the Management Company (i) shall observe and comply with all applicable provisions of the Fund Agreements, and (ii) shall have the same rights and obligations, and shall observe the same standards of care, as would be applicable to the General Partner if it (and not the Management Company) were providing the services performed by the Management Company.

A169, 170 (Management Agreement at 1, 2) (defining IGM as the "Management Company").

4

Partner who is subject to section 406 of ERISA and the rules and regulations thereunder[]" and (2) the Fund "shall comply with the requirements of section 404(b) of ERISA and the regulations thereunder[]."[8]

Section 3 of the Partnership Agreement sets forth indemnification and advancement rights. First, section 3.03(b) of the Partnership Agreement states, in relevant part, that the Fund shall

> indemnify and hold harmless each Indemnified Person from and against any damages, costs, losses, claims, liabilities, actions, and expenses, including reasonable legal and other professional fees and disbursements and all expenses reasonably incurred investigating, preparing, or defending against any claim whatsoever, judgment, fines, and settlements[], incurred by such Indemnified Person arising out of or relating to this Agreement[.][9]

However, the Partnership Agreement permits this indemnification for an Indemnified Person's actions or omissions only where "(a) such Indemnified Person acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Partnership and (b) such actions or omissions did not constitute Disabling Conduct."[10]

The Partnership Agreement defines Disabling Conduct broadly to include:

> with respect to any Person (other than an Indemnified Person that is a member of the Advisory Committee), (a) any of (1) fraud, gross negligence, willful misconduct, a violation of any civil or criminal law involving fraud, embezzlement, financial misconduct, misappropriation of funds or applicable securities laws, or (2) a material breach of such Person's fiduciary duties to the Partnership or a material breach of this Agreement or the []

---

[8] A146 (Partnership Agreement at 42). Sections 404, 406, and 410 are also sometimes referred to as sections 1104, 1106, and 1110 herein, respectively.

[9] A116 (Partnership Agreement at 12).

[10] *Id.*

Management Agreement; or (b) any conviction of such Person of a criminal felony[.][11]

"Indemnified Person" includes Invictus GP as the Fund's "General Partner" and IGM as the Fund's "Management Company," as well as each entity's "respective employees, officers, directors, and representatives[.]"[12]

Second, section 3.03(e) of the Partnership Agreement states that the Fund shall advance "[e]xpenses reasonably incurred by a[n] Indemnified Person in defense or settlement of any claim that may be subject to a right of indemnification hereunder" "upon the receipt of a written undertaking by or on behalf of such Indemnified Person to repay such amounts to the extent that it is ultimately determined that such Indemnified Person is not entitled to be indemnified hereunder."[13]

Section 6 of the Management Agreement provides that Covered Persons shall be entitled to "indemnification, including advancement of expenses, with respect to the Funds on the same terms and conditions applicable to 'Indemnified Persons' (or other equivalent term) in the Fund Agreements."[14] The Management Agreement defines Covered Persons as IGM and "its Affiliates, officers, directors, agents, stockholders, members, employees

---

[11] A158 (Partnership Agreement App. A).

[12] A160 (Partnership Agreement App. A).

[13] A117 (Partnership Agreement at 13).

[14] A169, 171 (Management Agreement at 1, 3) (defining Fund Agreements as "the limited partnership agreements for the Funds, including the First Amended and Restated Limited Partnership of the Master Fund [], as in effect from time to time").

and partners" and states that Covered Persons "shall be considered 'Indemnified Persons' for all purposes of the Fund Agreements[.]"[15]

## B. The Underlying Litigation

On September 29, 2023, the Fund's controlling limited partners removed Invictus GP and IGM as the Fund's general partner and management company, respectively.[16] On October 30, 2023, the Fund filed this action for breach of contract in the Court of Chancery seeking injunctive and declaratory relief.[17] The Complaint alleged that Defendants breached the Partnership Agreement and Management Agreement by withholding information and approximately $10 million in Fund assets after the Fund removed Invictus GP and IGM as its general partner and management company.

Defendants answered the complaint and brought counterclaims alleging that under the Partnership Agreement and Management Agreement, they were entitled to advancement from the Fund for their legal expenses. In response, the Fund asserted that the requested advancement was barred by ERISA. On the eve of trial in early 2024, Defendants removed the case to the United States District Court for the District of Delaware (the "District Court") citing the ERISA defense. The Fund moved to remand, arguing that the District Court lacked subject matter jurisdiction.[18] Indeed, the Fund argued

---

[15] A170 (Management Agreement at 2).

[16] A174–75 (Resolution of Fund Investors).

[17] *Interlocutory Appeal Order*, 2025 WL 1795946, at *1; A177 (Verified Complaint).

[18] The Fund argued, for example, that "[t]he claims asserted in the Fund's complaint do not arise under federal law and could not have been brought in federal court[:] [t]he claims for information, books and records are based on the Fund's partnership agreement, which is governed by the law of the Cayman Islands, and on an investment management agreement, which is governed by

7

that "[n]one of the claims in the Fund's complaint have any connection to federal law, including ERISA."[19] Defendants countered that "the Fund's claims were subject to complete federal preemption under ERISA."[20] The District Court granted the Fund's motion to remand noting that, although ERISA is "subject to exclusive federal court jurisdiction[,]" a "federal defense does not confer subject matter jurisdiction[,]" and Defendants were vague as to which counts they believe were preempted.[21]

Following remand to the Court of Chancery, the parties cross-moved for summary judgment. The Court of Chancery concluded that Defendants "violated the partnership and management agreements by retaining after their removal nearly $10 million and large amounts of information belonging to the Fund."[22] The court then entered judgment in favor of the Fund on its claims for breach of contract and declaratory and injunctive relief. The court also held that, as a matter of Delaware law, Defendants were entitled to advancement from the Fund, observing that "Delaware policy favors indemnification and advancement[,]" and that "[a]ny doubts should be resolved in favor of advancement[.]"[23]

---

Delaware law[;] [t]he claims for injunctive relief are based on Delaware law[;] [and] [t]he Defendants' advancement counterclaims, in turn, are governed by Cayman law or Delaware law, depending on the agreement under which indemnification and advancement are sought." A726 (Fund's Opening Br. in Supp. of Mot. to Remand at 2).

[19] *Id.* The Fund argued that "[e]ven if Defendants' Counterclaim could provide a basis for removal, and it cannot, it does not arise under ERISA or any other federal law." A742 (Fund's Opening Br. in Supp. of Mot. to Remand at 18).

[20] *Interlocutory Appeal Order*, 2025 WL 1795946, at *1.

[21] *Invictus Special Situations Master I, L.P. v. Invictus Global Mgmt., LLC*, 2024 WL 175736, at *2, 3 n.1 (D. Del. Jan. 12, 2024).

[22] *Interlocutory Appeal Order*, 2025 WL 1795946, at *1.

[23] A949 (Sep. 9, 2024 Telephonic Ruling at 6) (citations omitted).

8

However, it declined to rule on the ERISA-based defense, stating that the parties had not "satisfactorily articulate[d] why [the Court of Chancery] should or even can address the contours of ERISA."[24] The court then entered orders implementing its advancement ruling (the "Implementing Orders").[25]

In November 2024, the Fund filed a new complaint and an emergency motion for injunctive relief in the District Court, relying upon the ERISA defense.[26] The Fund also successfully moved the Court of Chancery to stay the Implementing Orders pending the District Court's decision on the Fund's emergency application.[27] In January 2025, the District Court denied the Fund's emergency application.[28] After the parties agreed to a stipulation of dismissal of the federal action, Defendants moved to enforce the Implementing Orders in the Court of Chancery and the Fund moved for partial summary judgment on its ERISA defense.

In May 2025, the Court of Chancery granted the Fund's motion for partial summary judgment and denied Defendants' motion for enforcement.[29] The court observed that

---

[24] A979 (Sep. 9, 2024 Telephonic Ruling at 36) ("I will thus enter my decision on the counterclaims solely as they relate to Delaware law. Any questions as to the impact of ERISA are specifically preserved. If those issues need to be litigated, the parties may do so in federal court.").

[25] *See* A1038–1063 (Implementing Orders).

[26] *See* A1065–1088 (Complaint for Declaratory and Injunctive Relief).

[27] *See* A1089–90 (Order Granting Motion to Stay).

[28] A1146–47 (Transcript of Motion for TRO at 50–51) (concluding that (1) there was no irreparable harm because "one way or another the affirmative defense is going to be decided before the advancement takes place, assuming that the advancement ever takes place[]" and (2) "the likelihood of success on the merits is also not met because I don't think I have the jurisdiction[]").

[29] ERISA Defense Ruling at 1, 21; *see also* A2147, 2167 (May 23, 2025 Telephonic Ruling at 1, 21).

ERISA section 1110 renders void as against public policy "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part[]."[30] The court also stated that "Third Circuit case law has interpreted this language and U.S. Department of Labor guidance on it as rendering void any contractual provision that purports to allow an ERISA-regulated plan to indemnify and advance funds to an ERISA fiduciary using plan assets."[31]

The court determined that, under the United States Court of Appeals for the Third Circuit's interpretation in *Secretary United States Department of Labor v. Koresko*,[32] the provisions entitling Defendants to advancement from the Fund's ERISA assets "were invalid at the time they were entered into."[33] The court also stated that a bar on advancement is particularly appropriate where (1) "defendants seek advancement for claims on which defendants have already been adjudicated to have misappropriated Fund assets" and (2) "defendants have not shown any ability to repay advanced sums[.]"[34]

On June 30, 2025, the Court of Chancery certified Defendants' interlocutory appeal framing the issue as:

> Whether, in a state court action involving what are asserted to be state law claims, an affirmative defense asserted by an ERISA-regulated fund under ERISA § 1110 bars state law counterclaims asserted by the fund's ERISA

---

[30] ERISA Defense Ruling at 13; *see also* A2159 (May 23, 2025 Telephonic Ruling at 13).

[31] *Id.*

[32] 646 F. App'x 230 (3d Cir. 2016).

[33] ERISA Defense Ruling at 21; *see also* A2167 (May 23, 2025 Telephonic Ruling at 21).

[34] ERISA Defense Ruling at 19; *see also* A2165 (May 23, 2025 Telephonic Ruling at 19).

fiduciaries under the fund's governing documents for advancement of their legal expenses out of the fund's assets.[35]

This Court accepted Defendants' application for interlocutory review on August 13, 2025.[36]

## II. CONTENTIONS ON APPEAL

On appeal, Defendants raise two arguments supporting their contention that the Court of Chancery erred in holding that ERISA section 1110 bars advancement for their state-law claims.[37] First, the advancement sought cannot relieve Defendants of any ERISA responsibility or liability because only state-law claims are at issue and any advancement is subject to an undertaking to repay. Second, ERISA section 1110(a) does not bar all advancement from ERISA plan assets.

In response, the Fund argues that the Court of Chancery correctly applied unambiguous Third Circuit case law holding that section 1110 of ERISA renders void any provision of a contract purporting to relieve a fiduciary from fiduciary responsibility, duty or liability.[38] The Fund disagrees that "decades of case law" permit advancement from ERISA plan assets and that "[a]t most, some cases permit 'indemnification' only *after* a fiduciary has been absolved of wrongdoing."[39] The Fund argues that (1) "Defendants try

---

[35] *Interlocutory Appeal Order*, 2025 WL 1795946, at *5.

[36] A2203, 2210 (Order Granting Interlocutory Appeal 1, 8).

[37] Opening Br. On Appeal of Defs.-Counterclaim Plaintiffs Below/Appellants [hereinafter "Opening Br."] at 3.

[38] Answering Br. On Appeal of Pl.-Counterclaim Def. Below/Appellee [hereinafter "Answering Br."] at 4.

[39] *Id.* at 5 (stating that "DOL guidance addresses the exceptions to section 410 of ERISA: payment from third-party sources, such as insurance, and ability to repay[]" and claiming that "Defendants established grounds for neither[]").

to redirect the inquiry to the specific claims and relief sought in litigation, but it is the fiduciary's conduct, not the claim asserted in litigation, that is determinative[]" and (2) "[a]dvancement and indemnification provisions are commonly subject to repayment, including those that have been found to be void under section 410 of ERISA."[40]

Alternatively, the Fund argues that advancement is barred (1) based on Defendants' already proven misconduct and inability to repay advanced funds and (2) by ERISA section 1106 as an impermissible extension of credit from the Fund. The Fund asserts that "federal case law and Department of Labor guidance require *evidence of ability to repay*[]" and that the Court of Chancery correctly found that "Defendants offered no evidence of ability to repay, which Defendants do not challenge on appeal."[41]

## III. STANDARD OF REVIEW

"This Court reviews *de novo* the trial court's ruling on a motion for summary judgment."[42] "We review questions of statutory interpretation *de novo*, because they include questions of law."[43]

## IV. ANALYSIS

Because the Court of Chancery has determined that Defendants are entitled to advancement as a matter of Delaware law, the sole issue here is whether advancement of litigation expenses related to state-law claims is otherwise barred by ERISA. Section

---

[40] *Id.* at 4.

[41] *Id.*

[42] *ACE Am. Ins. Co. v. Rite Aid Corp.*, 270 A.3d 239, 244 (Del. 2022).

[43] *Rapposelli v. State Farm Mut. Auto. Ins. Co.*, 988 A.2d 425, 427 (Del. 2010).

1110(a) of ERISA renders void, as a matter of public policy, contract provisions that purport to relieve a fiduciary from responsibility or liability for a violation of ERISA fiduciary duties.[44] Defendants argue that the requested advancement is not barred by ERISA here because this advancement, which is conditioned on an undertaking and which is sought for expenses incurred for the defense of state-law claims in state court, does not relieve Defendants from ERISA responsibility or liability. We agree and hold that the requested advancement does not violate section 1110. Accordingly, we REVERSE the Court of Chancery's conclusion that the advancement sought here is barred by ERISA.

### A. Section 1110(A) Bars Provisions That Purport to Relieve A Fiduciary From Responsibility Or Liability

"In ERISA cases, '[a]s in any case of statutory construction, our analysis begins with the language of the statute[.]'"[45] ERISA establishes "standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans[.]"[46] Specifically, section 1104 provides that "[a]n ERISA fiduciary must discharge his responsibility 'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like capacity and familiar with such matters' would use."[47] And section 1106 "supplements the fiduciary's

---

[44] 29 U.S.C. § 1110(a).

[45] *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 254 (2000) (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)); *see also Blue Beach Bungalows DE, LLC v. State*, -- A.3d --, 2025 WL 3768232, at *11 (Del. Dec. 30, 2025) (stating that when interpreting a statute, "this Court's primary goal is to ascertain and give effect to the intent of the legislature[]" and "[t]he starting point for this inquiry is the statute's plain language[]").

[46] *Cunningham v. Cornell Univ.*, 604 U.S. 693, 696 (2025) (quoting 29 U.S.C. § 1001(b)).

[47] *Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015) (quoting 29 U.S.C. § 1104(a)(1)); *see also Johnson v. Couturier*, 572 F.3d 1067, 1080 (9th Cir. 2009).

13

general duty of loyalty to the plan's beneficiaries [] by categorically barring certain transactions deemed 'likely to injure the pension plan.'"[48]  ERISA section 1110(a) states that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."[49]  "Thus, '[i]f an ERISA fiduciary writes words in an instrument exonerating itself of fiduciary responsibility, the words, even if agreed upon, are generally without effect.'"[50]

The DOL has issued guidance regarding the DOL's interpretation of section 1110 "insofar as that section relates to indemnification of fiduciaries."[51]  The DOL interprets section 1110 "to permit indemnification agreements which do not relieve a fiduciary of responsibility or liability under part 4 of title I."[52]  For example, indemnification provisions "which leave the fiduciary fully responsible and liable, but merely permit another party to satisfy any liability incurred by the fiduciary in the same manner as insurance purchased under section 410(b)(3), are [] not void[]."[53]  However, the DOL has also interpreted this section to

---

[48] *Cunningham*, 604 U.S. at 697 (quoting *Harris Tr.*, 530 U.S. at 241–42).

[49] 29 U.S.C. § 1110(a).

[50] *Johnson*, 572 F.3d at 1080 (quoting *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1418 (9th Cir. 1997)).

[51] 29 C.F.R. § 2509.75-4 (interpretive bulletin).

[52] *Id.*

[53] *Id.*; *see also Perelman v. Perelman*, 919 F. Supp. 2d 512, 523 (E.D. Pa. 2013) (determining that an indemnification provision was permissible where "it permits the Trustee to seek indemnification only from the employer and does not permit indemnification by the Plan[]"), *aff'd*, 793 F.3d 368 (3d Cir. 2015).

render[] void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan. Such an arrangement would have the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations.[54]

### 1. Indemnification and Advancement Are Distinct

The Fund argues that both indemnification and advancement have the exculpatory effect of "abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations."[55] Yet the Fund has not shown how the requested advancement

---

[54] *Koresko*, 646 F. App'x at 244 (quoting 29 C.F.R. § 2509.75–4). We note that several federal court opinions suggest that indemnification from the plan itself is not barred where a fiduciary is found not liable for ERISA fiduciary duty violations. *See Packer Engineering, Inc. v. Kratville*, 965 F.2d 174, 175 (7th Cir. 1992) (determining that section 1110 did not bar a "provision indemnifying a pension fiduciary" who "was absolved, not convicted[]" because "[m]aking a faithful fiduciary whole hardly 'relieves' the fiduciary of responsibility or liability[]"); *id.* at 176 ("How could anyone take seriously the proposition that ERISA forbids the indemnification of fiduciaries *wrongly* accused of misconduct, when ERISA itself allows a court to award fees to the prevailing side?" (citing 29 U.S.C. § 1132(g)(1))); *Leigh v. Engle*, 858 F.2d 361, 369 (7th Cir. 1988) ("While an award of fees to a losing defendant certainly would contravene Congress' intent, *see* 29 U.S.C. § 1110(a), plaintiffs point us to no statutory or common-law basis for denying fees to a *prevailing* trustee where the trust documents specifically contemplate such reimbursement."). Further, ERISA explicitly authorizes a plan to permit "reimbursement of expenses properly and actually incurred, in the performance of [a fiduciary's] duties with the plan[.]" 29 U.S.C. § 1108 (c)(2).

[55] Answering Br. at 19–20 (quoting 29 C.F.R. § 2509.75–4) (asserting that "the object of the statute's solicitude are [sic] exculpatory provisions and agreements, which undisputedly include advancement and indemnification[]"). The Fund also claims that advancement is exculpatory, and therefore violates section 1110, because it shifts the burden of defense costs from Defendants to the plan participants. *See* Oral Argument at 23:18–26:29 (Jan. 28, 2026), https://courts.delaware.gov/supreme/oralarguments/.

> COURT: It seems to me you have begged the question somewhat here, where [the Court] asked how does it relieve a fiduciary from responsibility or liability for any responsibility, obligation or duty under ERISA, by saying "because it's exculpatory." That's the same thing—the question is how is it exculpatory?

> FUND: It's exculpatory because it shifts the Defendant's burden to fund their own defense costs onto the Fund with nothing but a paper undertaking that is not guaranteed to be able to be collected on. And so ultimately potentially

would abrogate the Fund's right to recovery from Defendants for ERISA breaches where that advancement is sought for expenses incurred in defending state-law claims and requires an undertaking to repay the advanced funds if liability is found.

"While the rights to indemnification and advancement are correlative, they are still discrete and independent rights, with the latter having a much narrower scope."[56] "Advancement provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings."[57] But "the ultimate right to keep payments characterized as an 'advancement' depends upon whether the former corporate

millions of dollars of defense costs to fight the very Fund, to fight against the interests of plan participants that they promised to protect shifts from the Defendants onto the plan participants.

*Id.* at 25:27–26:29.

[56] *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 509–10 (Del. 2005); *see also*, *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212 (Del. 2005) (observing that "[a]lthough the right[s] to indemnification and advancement are correlative, they are separate and distinct legal actions[]"); *id.* ("The right to advancement is not dependent on the right to indemnification."); *id.* at 214 ("The limited and narrow focus of an advancement proceeding precludes litigation of the merits of entitlement to indemnification for defending one self in the underlying proceedings."); *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 n.4 (Del. 1992) (recognizing the distinction between rights to indemnification and rights to advancement and stating that "nothing we say here regarding advances should be construed to effect the parties' rights under the indemnification provisions of the Agreement[]" and that "the parties retain their rights to an 'ultimate determination' of their responsibilities under those provisions[]"); *Advanced Min. Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del. Ch. 1992) ("The right to be indemnified for expenses will exist (or will not) depending upon factors quite independent of the decision to advance expenses.").

[57] *Homestore, Inc.*, 888 A.2d at 211; *see also Gandhi-Kapoor v. Hone Cap. LLC*, 305 A.3d 707, 718 (Del. Ch. 2023); *In re Adelphia Commc'ns Corp.*, 323 B.R. 345, 375–76 (Bankr. S.D.N.Y. 2005) (distinguishing advancement from indemnification and stating "[b]y contrast, indemnification refers to the ultimate obligation of the corporation—not infrequently imposed as a mandatory matter by statute or bylaws—to bear the costs of defense and any [] ultimate fines, settlement, or damages awards, imposed upon an officer or director after a final determination of the merits of the claims asserted against that officer or director[]").

16

official is entitled to indemnification."[58] "If it is subsequently determined that a corporate official is not entitled to indemnification, he or she will have to repay the funds advanced."[59] Because "[t]he corporation maintains the right to be repaid all sums advanced, if the individual is ultimately shown not to be entitled to indemnification[,]" the corporate official remains liable for non-indemnifiable claims even after receiving an advance of funds.[60] Thus, "the decision to extend advancement rights should ultimately give rise to no net liability on the corporation's part[,]" because "the advancement decision is essentially simply a decision to advance credit."[61]

### B. The Requested Advancement Does Not Violate Section 1110

The requested advancement does not relieve ERISA fiduciary responsibility or liability by abrogating the Fund's right to recover from Defendants for ERISA breaches because the requested advancement is expressly contingent on a written undertaking. The

---

[58] *Homestore, Inc.*, 888 A.2d at 211–12; *see also Pudela v. Swanson*, 1995 WL 77137, at *5 (N.D. Ill. Feb. 21, 1995) (deferring "ruling on the validity of the indemnification clause[]" where "defendants have not established that any of Champion's directors have provided the corporation with an undertaking to repay legal expenses if their defense is unsuccessful, as required under § 5 of the bylaw[]" because "[i]f they have not done so, they potentially would not bear the financial burden of a finding that they breached their fiduciary duties[]"); *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Holding Co., LLC*, 853 A.2d 124, 129 n.18 (Del. Ch. 2004) ("Section 145(e) of Delaware General Corporation Law (the "DGCL") conditions the advancement of expenses to currently serving corporate officers and directors on the receipt of an undertaking."); *id.* at 129 ("Section 18–108 of the [Limited Liability Company Act] gives broad authority to members of LLCs to set the terms for indemnification in their operating agreements[,]" so "persons forming LLCs clearly have the authority to require a written undertaking as a condition to advancement."). An undertaking was a condition of advancement here.

[59] *Homestore, Inc.*, 888 A.2d at 214.

[60] *Advanced Min. Sys., Inc.*, 623 A.2d at 84; *cf. Doran Jones, Inc. v. Per Scholas, Inc.*, 2017 WL 2197100, at *7 (S.D.N.Y. May 2, 2017) (stating that a defendant "does not demand 'an exemption from personal liability'" by seeking an advance "to fund his defense against those claims[]").

[61] *Advanced Min. Sys., Inc.*, 623 A.2d at 84.

agreements provide that the Fund shall advance funds only "upon the receipt of a written undertaking by or on behalf of such Indemnified Person to repay such amounts to the extent that it is ultimately determined that such Indemnified Person is not entitled to be indemnified hereunder."[62]  And the agreements preclude indemnification for actions and omissions that constitute Disabling Conduct.[63]

Disabling Conduct is defined broadly in the Partnership Agreement to include "a material breach of such Person's fiduciary duties to the Partnership or a material breach of this Agreement or the [] Management Agreement[.]"[64]  These agreements require Invictus GP and IGM to conduct their affairs in compliance with "the standard of care of a fiduciary of an employee benefit plan under ERISA" including with respect to both sections 1104 and 1106.[65]  Therefore, any breach of fiduciary duties under ERISA, including breaches of the prudent person standard and *per se* violations, would constitute non-indemnifiable Disabling Conduct.  Thus, the Fund retains the right to recover from Defendants for any ERISA fiduciary duty breaches.

Further, this advancement does not implicate ERISA fiduciary responsibility or liability because it is sought for expenses incurred in defending state-law fiduciary duty claims in state court.  In the words of Section 1110, it does not "relieve a fiduciary from

---

[62] A117 (Partnership Agreement at 13).

[63] A116 (Partnership Agreement at 12); A171 (Management Agreement at 3).

[64] A158 (Partnership Agreement App. A).

[65] A146 (Partnership Agreement at 42); A170 (Management Agreement at 2).

responsibility or liability for any responsibility, obligation, or duty under this part[].”[66]

Accordingly, the requested advancement does not impermissibly relieve ERISA responsibility or liability in violation of section 1110.

The parties have not cited any decision of any court that has applied the relevant provisions of ERISA to bar advancement for expenses incurred in defending claims arising under state law.[67]  The Fund, relying on *Secretary United States Department of Labor v. Koresko*, asserts that courts “interpret section 410 to mean that ERISA prohibits advancement from plan assets.”[68]  Yet various federal court opinions suggest that advancement is permissible under section 1110 even when it is sought for expenses incurred in defending ERISA claims.[69]  And the DOL has issued an advisory opinion stating

---

[66] 29 U.S.C. § 1110.

[67]    *See*    Oral    Argument    at    30:25–30:40    (Jan.    28,    2026), https://courts.delaware.gov/supreme/oralarguments/.

> COURT: [Counsel], have you been able to identify any case in which a court has applied 410 to state-law fiduciary duty claims?
>
> FUND:  No, your Honor.  We have not.

*Id.*

[68] Answering Br. at 19 (citing *Koresko*, 646 F. App’x at 244).

[69] *See Walsh v. Reliance Tr. Co.*, 2023 WL 1966921, at *20 n.22 (D. Ariz. Feb. 13, 2023) (noting that the DOL “stated a contract provision allowing for the advancement of defense costs did not violate ERISA’s prohibition on indemnification of fiduciaries[]” and that “the Secretary has not cited any more recent authority establishing advancement of defense costs is improper in all circumstances[]”); *Moore v. Williams*, 902 F. Supp. 957, 966–67 (N.D. Iowa 1995) (Section 1110’s “prohibition does not prevent advancement of expenses until liability is determined.”); *Pudela*, 1995 WL 77137, at *5 (agreeing “that under *Packer Engineering* and other Seventh Circuit precedent, employee benefit plans may, in appropriate circumstances, be required to bear the financial burden of litigation against plan trustees[]” (citing *Packer Engineering*, 965 F.2d)); *Cent. States, Se. & Sw. Areas Pension Fund v. Am. Nat’l Bank & Tr. Co.*, 1979 U.S. Dist. LEXIS 8931, at *11 (N.D. Ill. Oct. 26, 1979) (“The reimbursement of litigation costs does not shield a fiduciary from any liability or responsibility whatsoever; it merely covers legal fees and litigation costs.”);

19

that certain indemnification provisions – which provided for advancement from an ERISA fund – were not rendered void by section 1110.[70]   Further, the United States Court of Appeals for the Third Circuit did not create a new rule in *Koresko* that section 1110 categorically bars advancement from ERISA funds even where advancement is contingent on an undertaking requirement and is sought for state-law claims in state court.

In *Koresko*, the Third Circuit, in a non-precedential decision, determined that advancement was barred in that case because the court "agree[d] with the District Court that th[e] indemnification provision, or Koresko's reliance on th[e] provision to seek plan assets for advancement costs, [wa]s in violation of ERISA."[71]   *Koresko* involved a benefit arrangement facilitated through a multiple employer trust where "[e]mployer contributions [were] received into the REAL VEBA Trust to be held for the benefit of all employees covered in the arrangement."[72]   The Secretary of Labor brought an "enforcement action against Koresko and related entities for breach of fiduciary duties under the Employee Retirement Income Security Act of 1974[]."[73]   No state-law claims were at issue.

---

*id.* at *11 n.5 (observing further that "absent any finding of breach of fiduciary duty, the current reimbursement of expenses is not prohibited by 29 U.S.C. §§ 1106(a) and 1110(a)[]").

[70] *See* U.S. Dep't of Labor, Advisory Opinion No. 77–66/67A (E.R.I.S.A.), 1977 WL 5446, at * 12 (Sep. 9, 1977) (stating that certain indemnification provisions that provide advancement from plan assets "do not contravene the provisions of section 410(a) of the Employee Retirement Income Security Act of 1974 (ERISA)[]").

[71] *Koresko*, 646 F. App'x at 232 n.*, 233, 244 (noting that the court was writing "only for the benefit of the parties[]" and that the opinion "is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent[]").

[72] *Solis v. Koresko*, 884 F. Supp. 2d 261, 268 (E.D. Pa. 2012), *aff'd sub nom.*, *Koresko*, 646 F. App'x.

[73] *Koresko*, 646 F. App'x at 232.

20

Koresko controlled the entity that served as trustee of the REAL VEBA Trust and sought advancement under trust documents that provided "indemnification for legal fees and expenses, 'in advance, unless it is alleged and until it is conclusively determined that such Claims arise from the Trustee's own negligence or willful breach of its obligations specifically undertaken pursuant to'" the Master Trust Agreement.[74] Although the *Koresko* court did not address whether an undertaking was required either by the agreements or by statute, we note that the relevant agreements do not appear to explicitly condition advancement on an undertaking and there is no suggestion in the opinion that an undertaking was otherwise required.[75]

---

[74] *Id.* at 243 (quoting App. to parties' briefing, *Koresko*, 646 F. App'x at 1120, 1136); *Solis*, 884 F. Supp. 2d at 270. Although the *Koresko* court's determination did not rely on the scope of the indemnification carve-out, other federal courts have determined that similar carve outs for "negligence and willful breach" purport to relieve a fiduciary from ERISA liability because they are subject to a reading under which a fiduciary could seek indemnification for breaches of *per se* ERISA violations. *See Woznicki v. Raydon Corp.*, 2019 WL 5702728, at *5 (M.D. Fla. Nov. 4, 2019) (determining that an indemnification provision "facially runs afoul of § 410[]" where the relevant indemnification provision "excludes coverage only for violations of § 404(a) of ERISA but allows indemnification for § 406 prohibited transactions[]"); *McMaken on behalf of Chemonics Int'l, Inc. Emp. Stock Ownership Plan v. GreatBanc Tr. Co.*, 2019 WL 1468157, at *3–4 (N.D. Ill. Apr. 3, 2019) ("[T]he relevant indemnification provisions of the engagement agreement appear to provide GreatBanc at least a plausible claim for indemnification for ERISA violations[]" where "the indemnification provision's carve-out excludes only final judgments resulting from GreatBanc's negligence or willful misconduct[]" so "the indemnification provision is susceptible to a reading under which GreatBanc could seek indemnification for a *per se* ERISA violation."). The *McMaken* court distinguished the relevant provision from a valid and enforceable indemnification provision in *Harris v. GreatBanc Trust Co.*, because "the indemnification agreement in *Harris* fully excluded violations based upon breach of fiduciary duty[]" while the *McMaken* provision "potentially provides indemnification for GreatBanc's *per se* violations under ERISA § 406 and could even allow partial reimbursement for GreatBanc's fiduciary duty breaches." *McMaken*, 2019 WL 1468157, at *5 (citing *Harris v. GreatBanc Trust Co.*, 2013 WL 1136558 (C.D. Cal. Mar. 15, 2013)).

[75] *See Koresko*, 646 F. App'x at 243–245; *see also Solis v. Koresko*, 2009 WL 5903138, at § 8.5 (E.D. Pa. Nov. 20, 2009) (Exhibit) (Master Tr. Agreement Single Emp. Welfare Benefit Plan attached as Ex. B to Def. Farmers and Merchants Trust Co. of Chambersburg's Br., Proposed

The *Koresko* court's analysis focused on whether "the District Court order denying Koresko from relying on plan assets to cover his litigation costs [w]as a proper interpretation of 29 U.S.C. § 1110 and 29 C.F.R. § 2509.75–4."[76] It first distinguished indemnification provisions that provide for indemnification from ERISA fund assets from provisions that provide for indemnification from a third party, stating that "[t]he [DOL] allows a trustee to seek indemnification from another party, as long as the indemnification does not come from the plan itself."[77] It then declined to follow *Harris v. GreatBanc Trust Co.*, because "[u]nlike in *Harris*, in this case, Koresko was seeking advancement costs from the plans themselves, not another party."[78] The *Koresko* court stated that advancement from the funds themselves "would effectively 'abrogate[] the plan's right to recovery from the fiduciary for breaches of fiduciary obligations.'"[79] Thus, it determined

---

Findings of Fact, and Conclusions of L. Addressing Appointment of Penn Public Tr. as Co-Tr.). The Third Circuit acknowledged that the Single Employer Welfare Benefit Plan Trust "is essentially identical to the REAL VEBA Trust[]" and that the operative documents of these trusts are also essentially identical. *Koresko*, 646 F. App'x at 233 n.3.

[76] *Id.* at 245.

[77] *Id*. at 244 (stating that "[p]lan indemnification provisions that allow the plan to indemnify a fiduciary are considered void[]" (citing *Johnson*, 572 F.3d at 1079–80)).

[78] *Id.* at 244–45 (citing *Harris*, 2013 WL 1136558).

> In *Harris*, the provision required Sierra Aluminum, the sponsor of an employee stock ownership plan, to indemnify GreatBanc, the trustee of the plan. This did not violate ERISA because, as discussed above, per guidance from the Department of Labor, indemnification provisions that "merely permit another party to satisfy any liability incurred by the fiduciary" are permissible.

*Id.* at 244 (quoting 29 C.F.R. § 2509.75–4).

[79] *Id.* at 245 (quoting 29 C.F.R. § 2509.75–4).

22

that "[a]lthough Koresko could have relied on liability insurance or indemnification through another party, he could not rely on plan assets to front his legal costs."[80]

*Koresko* is distinguishable and does not control the outcome here. The claims for which Defendants seek advancement are not ERISA claims, as the Fund has repeatedly acknowledged.[81] Further, the advancement sought here would not abrogate the Fund's right to recover from Defendants for ERISA breaches because this advancement is expressly contingent on an undertaking. That does not appear to have been the case in

---

[80] *Id.*

[81] *See, e.g.*, Answering Br at 1 (stating that the Fund "commenced a narrow, summary proceeding in the Delaware Court of Chancery to enforce its rights to information, books and records and to preserve and recover nearly $10 million of the Fund's cash[]" and that "[t]he summary relief sought by the Fund did not require the invocation of U.S. federal law[]"); *id.* at 2 (also stating that "disposition of the *Fund's summary claims* did not involve federal law[]"); *id.* at 29–30 (distinguishing this litigation from an ERISA enforcement action and describing it as "pre-fiduciary duty litigation commenced in state court to obtain books and records and otherwise enforce a fiduciary's continuing obligations after being removed[]"); A1139 (TRO Hearing Transcript) (referring to an affirmative claim to enforce ERISA and stating, "We didn't bring that."); A940 (June 7, 2024 Oral Argument Transcript) ("ERISA is not the basis for our underlying claims in our complaint; it is the basis for the defense to the counterclaim."); A726 (Fund's Opening Br. in Supp. of Mot. to Remand at 2) ("None of the claims in the Fund's complaint have any connection to federal law, including ERISA."); Oral Argument at 21:58–22:08, 29:03–29:13 (Jan. 28, 2026), https://courts.delaware.gov/supreme/oralarguments/ (stating that "the Fund did not bring ERISA causes of action[]" and "did not seek relief under ERISA as an ERISA enforcement action"). The Fund also stated that it chose to file a state-law claim because it needed more information to file an ERISA enforcement action. *See* Oral Argument at 29:03–29:39 (Jan. 28, 2026), https://courts.delaware.gov/supreme/oralarguments/.

> [W]e were doing what Delaware tells us to do, which was use the tools at hand to right the ship. We needed access to information, we needed to protect the money, and we needed to get the access to the information before we could actually determine the full extent of ERISA liability so that we could craft the ERISA enforcement action which is now filed and pending in the district court.

*Id.*; *see also* A2080 (Apr. 29, 2025 Oral Argument Transcript) ("The defendants argue that TREO should have put the Fund's assets and stability at risk by proceeding with a federal 502 enforcement action even though, as we clearly said in our complaint, we needed the books and records just to know the full extent of fiduciary misconduct.").

23

*Koresko*. And even though the *Koresko* court's analysis did not consider the impact of an undertaking, its conclusion that advancement under the relevant provision would effectively abrogate the plan's right to recovery seems to rely on an assumption that advancement would be provided without any expectation of repayment even if liability was found.[82] Advancement that is expressly contingent on an undertaking does not have the same impermissible effect.

Accordingly, we conclude that the advancement requested here is not barred by section 1110. This result reflects the distinction between the separate rights of advancement and indemnification.[83] Further, it balances the policy in Delaware favoring advancement rights under our well-established state law against the important federal interest in protecting ERISA plan assets.[84]

---

[82] The Fund advised this Court that the *Koresko* court was not considering an undertaking requirement in that case. *See* Oral Argument at 33:21–33:29 (Jan. 28, 2026), https://courts.delaware.gov/supreme/oralarguments/.

> COURT: The court wasn't considering an undertaking was it?
>
> FUND: That issue was not at issue in *Koresko*, but it was at issue in *Johnson*. And it was at issue in *Kavalec*.

*Id.* Citing to exhibits filed on December 7, 2015 in *Sec'y U.S. Dep't of Labor v. Koresko*, No. 15-2470 at A1120 (Ex. KK to Compendium of Exhibits), Defendants represent that "the provision in *Koresko* expressly authorized payment, without explicitly requiring repayment, to the ERISA fiduciary from ERISA plan assets for acts that may have breached ERISA fiduciary duties." Opening Br. at 37.

[83] *See supra* note 56.

[84] At oral argument, the Fund stated that "Delaware law does not apply to any part of this case[]" and suggested that a different result would be warranted if Delaware law applied. Oral Argument at 22:25–22:28, 22:41–22:59 (Jan. 28, 2026), https://courts.delaware.gov/supreme/oralarguments/.

> COURT: Are you suggesting that if Delaware law applied it would be a different result?

24

The Fund argues alternatively that section 1110 bars advancement because the "Court of Chancery's prior rulings and Defendants' admissions satisfy the standard for prohibiting advancement under *Johnson v. Couturier*.[85] The Fund contends that under *Johnson*, "advancement may be enjoined under section 410 if (i) there is a likelihood that a fiduciary duty was breached *or* (ii) the ERISA fiduciary is unable to demonstrate an ability to repay."[86]

---

FUND:   Yes, your Honor.  Delaware -- well, at least, Delaware policy.  Delaware policy favors advancement and puts the issues of fiduciaries ahead of a corporate company that has agreed to provide advancement.

*Id.* Although the Court of Chancery observed that the Management Agreement is governed by Delaware law and that the Partnership Agreement is governed by Cayman law, the court applied Delaware law to both agreements, in part, because "no party cite[d] a specific Cayman statute or court opinion to explain what Cayman advancement law entails or perhaps, more importantly, how it differs from Delaware law." A952 (Sep. 9, 2024 Telephonic Ruling) (noting that "the parties cite[d] extensively to and argue[d] Delaware law in support of their motions[]"). The Fund has not appealed the Court of Chancery's application of Delaware law. *See* A2210 (Order Granting Interlocutory Appeal 8) (granting "[t]he motion to strike the notice of cross-appeal" and noting that "[t]o the extent that the Fund seeks to raise an issue—contractual entitlement to advancement—that was decided more than six months before this appeal was filed, the cross-appeal is procedurally improper."). Nor has it cited any authority showing a difference between Cayman law and Delaware law regarding advancement policy.

[85] Answering Br. at 39 (citing *Johnson*, 572 F.3d at 1079–81).  The Fund also argues that advancement is barred by section 1106 as an impermissible extension of credit from the Fund. *Id.* at 43. The Court of Chancery did not address this argument, and we decline to do so in the first instance on appeal.

[86] Answering Br. at 39. The Fund also argues that proof of ability to repay advancement is required because a DOL Advisory Opinion stated that an indemnification provision permitting advancement contingent on receipt of an undertaking to repay and proof of ability to repay did not violate section 1110. Answering Br. at 41 (citing Advisory Opinion, 1977 WL 5446, at *8). However, the DOL did not conclude that satisfaction of both elements was required by ERISA by simply finding that the relevant provision was permissible. *See* Advisory Opinion, 1977 WL 5446, at *12; *see also Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *9 (Del. Ch. Feb. 13, 2018) ("Advancement is a contractual right governed by the terms of the operative agreement." (quoting *White v. Curo Tex. Hldgs., LLC*, 2017 WL 1369332, at *7 (Del. Ch. Feb. 21, 2017))); *id.* ("When a company has provided a covered person with a mandatory advancement right that is conditioned only on specific contractual requirements, such as an undertaking to repay, the company 'does not have the right to impose any terms or conditions on . . . advancement other than an undertaking to

However, in *Johnson*, the Ninth Circuit considered advancement of defense costs in the context of a preliminary injunction.[87] There, the litigation expenses were incurred defending against ERISA fiduciary duty claims. The *Johnson* court had to analyze the likelihood of success on the merits and whether the plaintiff would suffer irreparable harm. Here, we are not considering the advancement issue through the lens of a preliminary injunction. Nor are we considering claims brought under federal ERISA law.

Further, the Ninth Circuit's decision also relied on a determination that the indemnification provisions in *Johnson* were likely void under section 1110 because they "clearly 'purport[] to relieve' Defendants from their fiduciary responsibilities under ERISA."[88] The indemnification provisions "provide[d] complete indemnity so long as the challenged acts or omissions d[id] not involve deliberate wrongful acts or gross

---

repay.'" (quoting *Blankenship v. Alpha Appalachia Hldgs., Inc.*, 2015 WL 3408255, at *26 (Del. Ch. May 28, 2015))); *Homestore, Inc.*, 888 A.2d at 213 (noting that the right to advancement depends on the "uniquely crafted advancement provisions[]"); *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *4 (Del. Ch. June 18, 2002) ("If it chose, EDS could have conditioned former employees' advancement rights on an undertaking, proof of an ability to repay, or even the posting of a secured bond."), *aff'd*, 820 A.2d 371 (Del. 2003) (mem.). The relevant agreements do not require a showing of ability to repay because these provisions conditioned advancement only on an undertaking requirement. *See Reddy*, 2002 WL 1358761, at *4 ("Having been accorded the freedom to craft its bylaws as it wished, EDS cannot point to its own drafting failures as a defense to Reddy's advancement claim[.]"). And that requirement was met here. *See* A954 at 11:23–24 (confirming Delano's undertaking); A696 ¶ 54 (acknowledging receipt of undertakings). Further, the Court of Chancery has already determined that Defendants are entitled to advancement as a matter of Delaware law. A979–80 (Chancery Court Bench Ruling on Advancement at 36). As to the Court of Chancery's statement that Defendants have misappropriated Fund assets and have not shown any ability to repay advanced sums, there has been no ultimate and final determination on the merits.

[87] *Johnson*, 572 F.3d at 1078–79.

[88] *Id.* at 1080.

negligence."[89] The Ninth Circuit determined that the indemnification agreements "effectively limit Defendants' liability under ERISA because, so long as they do not engage in deliberate wrongful acts or gross negligence, Defendants will be indemnified—even if they violated the ERISA 'prudent man' standard of care."[90]

The *Johnson* court also found it significant that the signed undertakings – under which each Defendant agreed to repay advanced defense costs – did not "provide the ESOP with any recourse should Defendants be found to have violated only their fiduciary duties under ERISA."[91] Therefore, the Ninth Circuit determined that advancement was "tantamount to asking ESOP participants to pay for Defendants' defense costs, with no recovery possible or at least highly unlikely—even if Defendants breached their fiduciary duties to the ESOP—so long as Defendants did not engage in deliberate wrongful acts or gross negligence."[92] Thus, advancement under those provisions, would effectively abrogate the ESOP's right to recovery for ERISA breaches. Accordingly, the Ninth Circuit found that Plaintiffs demonstrated that "section 410(a) likely renders void the

---

[89] *Id.* at 1078.

[90] *Id.* (noting that "ERISA, by contrast, requires that a fiduciary act 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[]'" (quoting 29 U.S.C. § 1104(a)(1)(B))).

[91] *Id.* at 1075, 1080 ("[E]ach Defendant has executed an undertaking to repay TEOHC for 'any expenses paid by it on my behalf in advance of the final disposition of the [instant] suit[], if it shall ultimately be determined that I am not entitled to be indemnified by the Company' under Delaware law.").

[92] *Id.* at 1080.

indemnification agreements and advancement provisions therein."[93]  The Fund has not shown that the indemnification provisions at issue here are similarly impermissible.

## V.  CONCLUSION

For these reasons, we **REVERSE** the Court of Chancery's holding that ERISA bars advancement.  The matter is remanded to the Court of Chancery.

---

[93] *Id.* at 1079–80 (holding "that the district court did not abuse its discretion in preliminarily enjoining TEOHC from advancing Defendants' defense costs[]" under the relevant indemnification provision).